# Insurance Company *versus* Updegraff.

21   513
165   308

1. A vendor of real estate, after articles of agreement and before conveyance, may, like any other trustee, insure to the full value of the buildings, if he thinks proper.

2. If he *intended* to insure the whole interest, legal and equitable, he may, in case of loss by fire, recover the whole extent of the insurance, under a trust, as to the surplus, to hold it for the vendee.

3. Where the policy is in form an insurance upon the buildings and not upon the debt due to the vendor, it is *primâ facie* an insurance upon the whole legal and equitable estate, and not upon the balance of the purchase-money remaining unpaid; and the burden of showing that it was upon the latter alone rests upon the underwriters.

4. The premium paid is generally decisive of the question; for if the insurance was only upon the money due to the vendor, the premium would be quite insignificant on account of the value of the ground included in the sale, and the obligation of the vendee, both of which would stand as indemnities to the underwriters, who would be entitled to a cession of the vendor's claims upon them.

5. Where the insurance is only upon a certain proportion of the value of the buildings, the underwriters would only be entitled, in case of payment of the loss, to a cession of such proportion of the buildings as was covered by the policy.

6. But where there is an *actual* total loss—where there is neither property nor *spes recuperandi*, the cession has nothing to operate upon, and would be an idle ceremony.

[Insurance Co. *v.* Updegraff.]

7. Where the insurance is upon the building and not upon the purchase-money due, the underwriters have no claim to a cession of the vendor's title to the lot, nor to his claim against the vendee.

ERROR to the Common Pleas of *Lycoming county*.

This was an action of *assumpsit* to December Term, 1851, by Abraham Updegraff for the use of A. A. Winegardner *u.* The State Mutual Fire Insurance Company. The plea was *non assumpsit*, and payment with leave, &c.

The action was brought upon a policy of insurance No. 549, by which the said company, " For and in consideration of the sum of ten dollars, and of the premium note of twenty dollars, by the said company received, do insure Abraham Updegraff of Williamsport, in the county of Lycoming, and state of Pennsylvania, against loss or damage by fire, to the amount of one thousand dollars, on the following property, as described in application and survey No. 549, viz. : on his wooden block $1000."

"And the said company do hereby promise and agree, to and with the said insured, to make good unto him, his executors, administrators, and assigns, all such loss or damage, not exceeding in amount the sum insured, as shall happen by fire to the property as above specified, during the term of two years from the seventh day of August, one thousand eight hundred and fifty, at 12 o'clock at noon, unto the seventh day of August, one thousand eight hundred and fifty-two, at 12 o'clock at noon; the said loss or damage to be estimated according to the true and actual value of the said property, at the time the same shall happen, &c."

In the application by Updegraff, the plaintiff, which was given in evidence on the part of the plaintiff, on the trial, in answer to the questions : " Is it (the property) encumbered ?   If so, to what amount ?"   Updegraff answered, " Sold to Winegardner under contract to convey title when the purchase-money is paid, to be paid in annual instalments of $500—$500 paid on it."

The premium note, dated August 7, 1850, for $20, was given by Updegraff.

From a copy of articles of agreement between Abraham Updegraff and Abraham A. Winegardner, dated 15th October, 1849, given in evidence, it appeared, that on that day Updegraff entered into an agreement with Winegardner for the sale of the property insured, for the sum of $2800 ; $500 to be paid on the 1st April, 1850, when possession is to be given, and $500 on the 1st of each succeeding April, until $2500 are paid, and $300 on the next April, which will be the last payment."

By the same agreement, Winegardner agreed to rent a part of the premises to Updegraff, then occupied by said Updegraff as a store, for two years from the time he, Winegardner, got possession, for $100 per annum.

[Insurance Co. v. Updegraff.]

The premises insured were entirely consumed by fire, on the 16th July, 1851. It was testified that the loss of the house was total.

*After the insurance*, and before the fire, as appeared by endorsements on the articles of agreement above mentioned, Updegraff had received from Winegardner, on the purchase-money, $1108, making the whole payment on account of it $1618.

One of the conditions of the policy of insurance was in the following words: "The interest of the insured in this policy is not assignable, unless the assignee, before any loss happens, shall give notice in writing of the assignment, in pursuance of the by-laws of this company, and have the same endorsed on, or annexed to this policy."

Article 19, of extracts from the by-laws annexed to and printed on the same sheet with the policy, is as follows:

"Article 19.—In all cases when the policy is to be assigned, the assignee must sign the premium note—give a new note, or give security for the payment of the same. The assignment should be made out on the back of the policy, and sent to the secretary, or a true copy, with fifty cents recording fees, to be approved by a director, and recorded on the policy assigned."

It did not appear from the evidence in the case, that the policy on which suit was brought, had ever been assigned by Updegraff to Winegardner.

On the part of the *defendant* it was proposed to ask a witness whether he knew how Updegraff held the property, whether as owner or tenant?

The proposed evidence was overruled. First bill.

Offer was also made to prove the value of the *lot*, after the building was burned. This was offered in order to show that Updegraff had not sustained any loss. Objected to because the *lot* was not insured, and as irrelevant. Objection sustained. Excepted to. 2d bill.

On the part of the plaintiff, it was testified under exception, by C. Lloyd, that he acted as agent of the company in effecting the insurance. He further testified, "I went to Updegraff, and told him I thought the application should be made in his name; that he was legal owner of the property. He said he had no objection to put his name to the note; I should do as I thought best. I told Updegraff I would send an application in his name, stating in the application precisely how the property was situated; if it was not right the company would return it to me for correction; if they approved of the application they would issue a policy, and it would be all right. I accordingly made out the application, which has been given in evidence here. I forwarded the application to the company; the policy issued on it to Updegraff; can't recollect if it

was sent to me or Updegraff. Updegraff disclosed to me all the facts."

This was the 3d bill.

The defendant's counsel submitted points as follows:

1. That if the jury believe the value of the lot, after the destruction of the buildings, was sufficient to pay and satisfy Updegraff the balance of the purchase-money due him at the time of the fire, then the said Updegraff had no insurable interest at the time of the fire, and sustained no loss, and cannot recover in this action.

2. That to entitle the plaintiff to recover, he must satisfy the jury he had an interest at the time of the insurance, and at the time the fire happened; and that, as the policy is strictly a contract of indemnity, he can only recover the value of his beneficial interest at the time of the fire, if any, in the property destroyed.

3. That if the plaintiff, Updegraff, is entitled to recover the loss which he has sustained, if any, then the company have a right to be subrogated to all his securities as against his vendee, Winegardner.

4. That Winegardner having paid to Updegraff, *subsequent to the insurance*, the sum of $1108, on the article of agreement for the sale of the premises, such payment reduces the liability of the company *pro tanto*.

5. That under all the circumstances in this case the plaintiff is not entitled to recover.

JORDAN, J., answered the foregoing points *in the negative*, and instructed the jury that the plaintiff was entitled to recover.

May 12, 1853, verdict for plaintiff, for $1089.50.

Error was assigned to the action of the Court relative to the evidence offered, as stated in the three bills of exception; and to the answers to the points, and the charge.

· *Scates*, with whom was *Pollock*, for plaintiff in error.—As to the second assignment, relating to the rejection of evidence of the value of the lot, it was said that if Updegraff sustained no loss, neither he, nor Winegardner in his name, could recover. That Updegraff retained the legal title as security for the purchase-money. That that interest only was insured by him—*after* the insurance and before the fire, he received on account $1108, leaving a balance of about $1200. It was contended that if the value of the premises after the fire equalled or exceeded $1200, as it was said the defendants were prepared to prove, then Updegraff sustained no damage. That the contract of insurance is one of indemnity, and the contract was *with Updegraff*. That the lot of ground being full security to Updegraff for the balance of the purchase-money, and he having received from Winegardner

[Insurance Co. *v.* Updegraff.]

more than the full value of the buildings before and since the insurance (the appraised value of the building being stated to be $1500), he had at the time no insurable interest and consequently sustained no loss. That in this view the value of *the lot* was material, and evidence of it should have been received.

It was said that in the present case Updegraff cannot recover, because he has sustained no loss; and Winegardner, his vendee, cannot recover, because he is not a party to the contract; that there was no evidence that the insurance was made for him, by his direction, with his knowledge or consent. The application was made, money paid, note given, and all other acts done by Updegraff, and *his* interest alone insured.

As to the third bill of exceptions: It was said that the evidence offered ought not to have been received. The contract of insurance is to be construed by its own terms, expressed in the policy, and it cannot be varied by parol proof: New York Gas-Light Co. *v.* The Mechanics' F. I. Co., 2 *Hall* 108; Thompson *v.* Ketchum, 8 *Johnson R.* 189.

That conversations at the time of its execution are inadmissible: 13 *Mass.* 99; *Id.* 172; *Ham. on Ins.* 79.

As to the second and third points, it was, *inter alia*, observed, that a policy against loss by fire is a personal contract, and a contract of indemnity to the assured only: *Ham. on Ins.* 7; 1 *Hall* 111–12.

The party insured must have a property in the subject insured, or he can sustain no loss: 4 *Bro. P. Ca.* 431; 2 *Atk.* 554; *Ham. on Ins.* 18.

If the insured parts with his interest before loss happens, so that he has no interest left, he cannot recover: 2 *Pick.* 249. It was said that if a recovery can be had in this case, it must be upon the ground that Updegraff has sustained a loss by the fire. It was said that he was not a trustee for Winegardner, and that the latter could not avail himself of the insurance, not being a party to it, and it not having been assigned to him, as prescribed in the policy, with the assent of the Company. That Winegardner was liable to Updegraff on the contract of sale. The case of Smith *v.* Ins. Co., 5 *Harris* 253–260, was cited.

It was said that if Updegraff was entitled to recover, the company have the right of *subrogation* to all his securities, as against Winegardner, his vendee: 5 *Harris*, above cited; 6 *Mass.* 81.

*Maynard* and *Armstrong*, for defendant in error.—The parties had valued the property at $2800. The *house* was said to be worth from $1500 to $1600. This latter sum deducted from $2800 will leave $1200 for the *lot*. There remained due to Updegraff at the time of the fire $1419.60. This would leave to

[Insurance Co. *v.* Updegraff.]

Updegraff an interest *in the building* of $219.40. If he had an insurable interest he may recover damages done to the property not exceeding the sum insured: 9 *Barr* 199.

But the plaintiffs considered the value of the lot, irrespective of the buildings insured, as irrelevant. Updegraff held *the legal title*. The executory contract was not to be completed till April, 1855, when the last payment became due. Updegraff's interest pervaded the entire premises, and it did not attach specifically to *the lot* exclusive of the building. He had the legal title in both lot and building. It was a higher species of claim than a mere security. Some of the cases cited on part of the plaintiff in error, were cases where the legal title had been parted with, and security by mortgage or otherwise taken, and insurance on the security.

The insurance in this case was not on the lot, but upon the buildings; and the accidental increase or diminution of the value of the lot, on which the buildings were erected, could not affect the question as to recovery for the value of the buildings in case of their destruction. With as much propriety could it be alleged that in case the value of the real estate rise between the time the policy was effected and the time of the loss, to the value of the insurance, that no recovery could be had on the policy, in the case of injury to the building by fire.

The plaintiff was *the legal owner* of the property, and he insured it. The fact that he had contracted to sell it was not material, as it respected the rights of either plaintiff or defendant. The suit is in the name of Updegraff, and as far as the right of the company is concerned, it is immaterial whether Updegraff receives the amount received, or whether Winegardner receives it.

The evidence of the agent was not received to vary the terms of the contract, but for the purpose of showing that all the facts of the case were disclosed at the time of the application: 2 *W. & Ser.* 545.

The opinion was delivered, September 15, by

LEWIS, J.—This was an action on a policy of insurance effected by the vendor after articles for the sale of the property and before conveyance. The sum due to the vendor, at the time of the insurance, was $2300, which was reduced by payments afterwards, so that the sum due to him at the time of the loss was only $1192. The verdict was in his favor for the sum of $1080.50; a sum not sufficient to cover the whole extent of his interest. The house was destroyed by fire. The defence was that the lot is sufficient security for the unpaid purchase-money, and that the insured has no insurable interest beyond.

It is sometimes stated, in general terms, that by the contract of sale the purchaser of real estate becomes in equity the owner; but

this rule applies only *as between the parties to the contract*, and cannot be extended so as to affect the interests of others.    The purchaser, before the contract is carried into effect, cannot, against strangers to the contract, enforce equities attaching to the property: *Darts. Vend. & Purch.* 115; 3 *Mylne & Craig*, 70.    A stranger cannot set up the equitable title of the vendee to defeat an ejectment brought by the vendor against the clear equitable title of the vendee.    At law the vendor, before payment of the purchase-money and delivery of the conveyance, is, to all intents and purposes, the owner of the estate.    It is true that he is a trustee for the vendee, who, *as between the parties to the contract*, is bound to take the estate subject to every loss which may happen to it without the fault of the vendor, and is consequently entitled to every benefit accruing to it after the agreement: Paine v. Meller, 6 *Ves. Jun.* 349; *Sugden* 199.    The right to the benefits of the purchase fix him with the losses which may happen to it; but the latter branch of the proposition has not been established without reluctance, because there is a hardship in compelling payment after the consideration fails.    The vendee's liability to pay for a house which was burnt down after the contract, and before the time appointed for payment of the purchase-money, was at one time doubted; Stent v. Baily, 2 *P. Wms.* 220; at another time his liability was placed upon the special ground that he had been "infeft before the burning:" Hunter v. Wilsons, and Atchison v. Dickson, *Sugden on Vend.* 200, *n.* 1.    At another time it was held that, in the case of a sale before the master, he was not liable for a loss which happened after the report had been confirmed *nisi:* 11 *Ves. Jun.* 559; and a lessee was relieved because the fire happened before the time appointed for the commencement of the term, although after the date of the contract: Wood v. Hubbel, 6 *Month. Law Rep.* 237.    These cases show that, notwithstanding the rule, the hardship of the case secures for the vendee the favourable consideration of the Court, and that slight circumstances will be laid hold of for his relief.    Following the spirit of these decisions, the Courts will make no presumptions, in the case of an insurance by the vendor, that it was his intention, in the event of a loss, that the vendee should bear not only the measure of it which fell upon him by the accident, but that he should also indemnify the insurance company.    On the contrary, as the vendor is a trustee for the vendee, every act of his in relation to the estate will be presumed to be for the benefit of the vendee, subject of course to the prior claims of the vendor himself.    This is reasonable, because, as the vendee must suffer the losses which may happen to the property, it is just that he should have the advantage of any benefits which accrue to it; and, next to the security of his own interest, a trustee will be presumed to have in view the interest of the *cestui que*

*trust.* Although the vendor is not bound to insure, or even to continue an insurance already made, he may, like any other trustee having the legal title, insure if he thinks proper, to the full value of the property: 1 *Arnould* 259; 2 *B. & P. N. R.* 324. It is true that in the case of a mortgagee of a ship he can only recover to the extent of his mortgage debt, *unless it appears that in effecting the insurance he intended to cover, not his own interest only, but that of the mortgagor also*: 2 *B. & Ad.* 193; 1 *Moody & Rob.* 153. If he *intended* to cover the whole interest, both legal and equitable, he may recover the whole amount of the insurance, under a trust, as to the surplus, to hold it for the mortgagor: Carothers *v.* Shedden, 6 *Taunt.* 17; 1 *Arnould* 252. The same rule applies to the case of an insurance by a vendor. There is this difference, however, that as the whole estate is at law in the vendor, and the vendee has only a title to go into equity, the insurance company cannot assert the rights of the latter, or go into equity in respect to them, except upon principles of equity and good conscience. An insurance upon a house, effected by the vendor, is *primâ facie* an insurance upon the whole legal and equitable estate, and not upon the balance of the purchase-money. Where the form of the policy shows it to be upon the house, and not upon the debt secured by it, the burthen of showing that the insurance was upon the latter and not upon the former, rests upon the underwriters. There is no hardship in this. The premium paid, as compared with that usually charged where the insurance is upon houses, and not upon debts secured by them, is generally decisive of the question, and the rates of insurance are peculiarly within the knowledge of the insurance company. If the insurance was upon the whole estate, the premium would be according to the usual rates for houses of that description and location; if it was only upon the debt due to the vendor, there would be a large reduction, on account of the responsibility of the vendee, and the value of the lot of ground included in the sale, because both of these would, in that case, stand as indemnities to the underwriters. They would be entitled to a cession of the vendor's claims, from which an ample indemnity might be recovered. If the lot was worth the balance of the purchase-money, there would be no risk whatever, and the premium would be quite insignificant. If the intention was to insure only the debt due to the vendor, and a full premium was charged, without deduction for the securities which the underwriters knew he held, a portion of the premium should have been returned, upon the principles which require a return of premium for *short* interest, for *over insurance*, and for *double insurance*: 11 *Pick.* 85; 1 *Met.* 16; 2 *Arn.* 1226.

But there was no evidence tending to prove that the premium was less than the usual rates for houses of the description set forth

[Insurance Co. *v.* Updegraff.]

in the policy, where the whole estate is insured. Nor was there any offer to return any portion of the premium. On the contrary, all the evidence tended to show that the insurance company was fairly informed of all material facts—that its agent advised the insurance to be taken in the name of the vendor, because the latter were "the legal owners," and that the vendor replied that he had "*no objection* to sign the premium note." Unless the intention was to cover both interests, there was no ground for question, or for taking or giving advice in regard to which name should be used, or for the vendor's consideration whether he had or had not any objection to signing the premium note.

The instrument before us is an open policy of limited extent. The underwriters agree to make good to the insured, not *all his loss,* but all such loss or damage, not exceeding the sum stated, as shall happen by fire to the property—the loss or damage to be estimated, not according to the balance of purchase-money which may remain unpaid at the time of the damage, nor according to the probabilities of recovering such balance from the vendee, or from the lot, but "according to the true and actual value of the said property." The policy is in form an insurance upon the house, and not upon the debt; and no evidence whatever was given to change its character, or to show that anything more or less was intended by the parties. It follows that the plaintiff below was entitled to recover, under a trust, as to the surplus, for the benefit of the vendee. The underwriters have shown no equitable right to intermeddle between the vendor and the vendee. Under such circumstances they must be content to respond to the party with whom they made the contract of insurance.

In Smith *v.* Columbia Ins. Co., 5 *Harris* 353, the insurance expressly included *the lot,* and was stated to be to *cover a mortgage.* As the insurance company, on such a policy, would have been entitled to a cession of the mortgage, upon payment of the amount, it was properly held that the concealment of prior encumbrances which made it worthless, and would, if known, have enhanced the premium, was a good defence. But here the insurance is upon the building alone—it is not expressed to be to cover a debt—and the lot is not included. The underwriters are therefore not entitled to a cession of the vendor's title to the lot, or of his claim upon the vendee. The cession of a part of the house, according to the proportion of its value insured, would be all that could be demanded under such an insurance. But even this has become impossible by reason of its entire destruction. The testimony is, that it was a total loss—not a mere *technical total loss,* but an *actual total loss*—that it was entirely burnt down; that "not one stick was left upon another." Where there is no vestige of the property left, or (which is the same thing) where it

has been finally condemned as lawful prize by the Court of the last resort, the cession has nothing to operate upon. There is neither property nor *spes recuperandi*, and the cession in such case would be an idle ceremony : 4 *Bin.* 462 ; 8 *John.* 245 ; 1 *Peters* 215.

The Court was therefore correct in the instruction that the plaintiff was entitled to recover.

We see no error whatever in the proceedings, and the judgment is therefore affirmed.

Judgment affirmed.