## PATRICK CALLAHAN vs. SAMUEL LINTHICUM.

*When upon an Insurance effected by a Mortgagee, the Mortgagor is entitled after Payment of the mortgage Debt, to recover from the Mortgagee the amount of the Insurance that he received from the Insurance Company—Liability in Equity for money received, a sufficient Consideration to support a Promise upon which an Action at law may be maintained.*

In June, 1869, L. sold and conveyed to C. certain real estate and took from him a mortgage to secure the balance of the purchase money. At the time of the sale and conveyance, the mortgagee held a policy of insurance on the buildings on the farm, and notified the company of the sale and conveyance, and of the fact that he held a mortgage on the property for the balance of the purchase money. By a provision in the charter of the company the premium note given by the assured, continued to be a lien upon the property after the sale. In December, 1869, the buildings on the property were destroyed by fire, and by letter dated on the 20th of the month, the mortgagee of the property claimed of the company the insurance, which was paid to the extent of $800 before the maturity and payment of the mortgage debt. The mortgagor did not insure the property for the benefit of the mortgagee. After the fire the mortgagee promised that if he got the money, he would give it to the mortgagor, or allow it on the last payment of the mortgage debt. After payment of the mortgage debt the mortgagor demanded of the mortgagee the whole amount of the insurance received; with this demand the mortgagee refused to comply, but offered to give one-half of the sum; this the mortgagor declined to receive, and instituted suit to recover the whole amount as money had and received to his use. HELD:

That as the mortgagee was liable in a Court of Equity to the mortgagor for the money received from the insurance company, such liability was a sufficient consideration to support his promise which gave to the mortgagor a right to maintain his action; and to recover the money received by the mortgagee from the company, subject to be abated by any necessary or reasonable costs and expenses incurred by him in collecting the sum, and any premium paid by him under the policy after the sale.

7                    v. 43.

APPEAL from the Court of Common Pleas.

On the 1st day of June, 1869, the appellee conveyed certain real estate to the appellant and took from him a mortgage bearing date the 5th of June, 1869, to secure the balance of the purchase money. At the time of the sale and conveyance to the appellant, the appellee held a policy of insurance on the buildings on said farm, issued by the Mutual Fire Insurance Company of Montgomery County, and notified the Company of the sale and conveyance, and of the fact that he held a mortgage on the property for the balance of the purchase money. The buildings on the property were destroyed by fire in December, 1869, and the appellant, by letter dated on the 20th of the month, claimed of the Insurance Company the insurance, which was paid to the extent of eight hundred dollars, before the maturity and payment of the mortgage debt. The debt was subsequently paid in full. It was admitted that the appellant did not insure the property in the Mutual Fire Insurance Company for the benefit of the appellee. It was proved that the appellee, after the fire, promised the appellant that if he (the appellee) got the money from the Insurance Company he would give it to the appellant, or allow it on the last payment of the mortgage debt; that the appellee called upon the counsel of the appellant and offered to give one-half of the eight hundred dollars to the appellant; which offer the appellant refused, and on the 6th of March, 1873, instituted suit to recover of the appellee the whole amount of the insurance received by him. The declaration contained the common money counts; but the appellant relied altogether upon the count "for money received by the defendant for the use of the plaintiff."

The appellee, after the appellant had offered all his evidence and closed his case, asked the Court to instruct the jury : "That upon the pleadings and evidence offered by the plaintiff in the cause, he was not entitled to recover." This prayer the Court (GAREY, J.) granted, and the ver-

dict and judgment being for the defendant, the plaintiff appealed.

The cause was argued before BARTOL, C. J., STEWART, GRASON, MILLER and ALVEY, J.

*George M. Gill*, for the appellant.

This case ought not to have been taken from the jury as it was by the Court below.

Linthicum having insured the dwelling, &c., before he sold, and the insurance having been continued with consent of the Insurance Company after the sale, he became *trustee*, entitled to be paid the loss, and had the right to apply the amount received from the Insurance Company, to pay the balance of the purchase money due him, and after receiving such balance, he was bound to account to Callahan for any surplus received; having received the entire balance of the purchase money, and the further sum of eight hundred dollars from the Insurance Company, he became bound to pay Callahan the surplus after payment of his balance, and his promise so to pay, as given in evidence, is founded upon a sufficient consideration. *Carpenter vs. The Providence Washington Ins. Co.*, 16 *Peters*, 2; *Parsons on Maritime Law*, 502, 92, *note 2;* 1 *Phillips on Insurance*, 107 *and* 108, (2 *Ed.;) Hammond on Fire Insurance*, 21, 22; *Insurance Company vs. Updegraff*, 21 *Penn.*, 513; *Carruthers vs. Sheddon*, 6 *Taunt.*, 14.

The insurance in the case being on the mutual plan, and Linthicum having given his note, which, under the contract, continued to *be a lien on the property sold after such insurance*, and until finally settled, Linthicum must be regarded as a trustee, holding the insurance as well for his own protection as for that of the purchaser; this condition of things was recognized by Linthicum, the Insurance Company and the purchaser, the appellant, and it would seem to follow that Linthicum, the trustee, having received

the entire purchase money, and also eight hundred dollars on account of the insurance, must account to the appellant for the excess in his hand.

The whole matter, under the circumstances, was for the jury, and in taking the case from the jury, there was manifest error.

*T. A. Linthicum,* for the appellee.

The appellant had no interest in the appellee's insurance. The contract for insurance was a separate and independent transaction between the company and the appellee, for which the appellant was not bound or charged—he paid no premiums—nor was he liable to pay or furnish, the means for paying such premiums. The insurance was effected solely for the appellee's indemnity and benefit, and the appellant has no legal or equitable right to the money paid to the appellee by the company. *Garrell vs. Hanna,* 5 *H. & J.,* 412 ; *Tongue vs. Nutwell,* 31 *Md.,* 317 ; *Russell vs. Southard,* 12 *Howard,* 139, 157.

The policy, after the sale and notice given thereof to the company, continued only as an insurance of the mortgage debt ; and upon the payment of $800 by the company if such payment amounted to the whole debt, the company would be entitled to an assignment of the mortgage, or if the insured should collect the debt he would be considered as a trustee for the company, or be liable to the company in an action for money had and received, and in like manner the appellee would be liable to the company *pro tanto* when the insurance paid did not cover the whole debt. *Carpenter vs. Providence Washington Ins. Co.,* 16 *Peters,* 501 ; *King vs. State M. F. Ins. Co.,* 7 *Cush.,* 1 ; 2 *Phillips on Insurance, sec.* 1712 ; *Bodman vs. Murphy,* 35 *Md.,* 162.

The promise made by the appellee to give the appellant the $800, or to allow it on the last payment was a mere naked promise—without consideration.

BARTOL, C. J., delivered the opinion of the Court.

The special facts and circumstances of this case as they appear in the record, I think take it out of the operation of the general rules which govern contracts of insurance made by a mortgagee for his own indemnity, and exclusively for the protection of his own interest in the property insured. Where such insurance has been effected by the mortgagee, it is very clear that the mortgagor has no privity with the contract, and can claim no benefit under it. In such case it is well settled, as stated by the Supreme Court "that where the mortgagee insures solely on his own account, it is but an insurance of his debt; and if his debt is afterwards paid or extinguished, the policy ceases from that time to have any operation ; and even if the premises insured are subsequently destroyed by fire, he has no right to recover for the loss, for he sustains no damage thereby ; neither can the mortgagor take advantage of the policy, for he has no interest whatsoever therein. On the other hand, if the premises are destroyed by fire before any payment or extinguishment of the mortgage, the underwriters are bound to pay the amount of the debt to the mortgagee, if it does not exceed the insurance. But, then, upon such payment, the underwriters are entitled to an assignment of the debt from the mortgagee, and may recover the same amount from the mortgagor, either at law or in equity, according to circumstances ; for the payment of the insurance by the underwriters does not, in such case, discharge the mortgagor from the debt, but only changes the creditor." *Carpenter vs. The P. W. Ins. Co.*, 16 *Peters*, 501; *Insurance Co. vs. Woodruff*, 2 *Dutcher*, 541.

But such was not the nature of the insurance in the present case. It appears that the appellee, before the sale to the appellant, when he was absolute owner of the property, caused the same to be insured by the " Mutual Fire Ins. Co. of Montgomery County." This insurance was

upon the property at the time of the sale, and by the charter of the company, *sec.* 4, the premium note given by the assured continued to be a lien upon the property. When he sold and conveyed the property to the appellant, received part of the purchase money, and took a mortgage to secure the balance, it appears that the insurance upon the property was continued, *under the same policy,* in *the same manner* and *for the same amount as before.* There is nothing on the face of the policy to indicate that it was continued as an insurance only upon the interest of the mortgagee, and intended merely to cover the mortgage debt. It is entirely consistent with its terms, to construe the policy as intended to cover to the extent of the sum therein named, the whole property, as well the interest of the mortgagor as of the mortgagee. If such was the intention and contract of the parties, the interest of the mortgagor would be protected, although his name did not appear in the policy ; and that such was the understanding of all the parties, is clearly shown by the acts and conduct of the parties themselves.

When the loss by fire occurred, though a part of the mortgage debt remained unpaid, the insurance company paid the amount due under the policy to the appellee, without any reference to the amount due upon the mortgage, and without claiming any right of subrogation with respect to the mortgage debt ; and the appellee, expressly promised the appellant, that when the money should be received from the company, he would give it to the appellant, or allow it as a credit upon the mortgage debt. These facts are entitled to great weight in determining the true intent and meaning of the contract of insurance. As was said by the Supreme Court in *Chicago vs. Sheldon,* 9 *Wal* , 54:

"In cases where the language used by the parties to the contract is indefinite or ambiguous, and hence of doubtful construction, the practical interpretation by the parties

themselves is entitled to great, if not controlling influence." The same principle of construction has been sanctioned by this Court in *Citizens Fire Insurance, Security and Land Co. vs Doll*, 35 *Md.*, 107 ; where Judge ALVEY speaking for the Court said, "Although it is very true, as contended by the appellee, that where an agreement is plain, and free from all ambiguity, it will not be construed by the acts and admissions of the parties with reference to it, yet where the intention is obscure or doubtful, and extrinsic evidence can be invoked, no evidence is more reliable or entitled to greater consideration, as manifesting what their intention was, than the acts and conduct of the parties themselves."

Applying this rule of interpretation to the present case, it seems to be very clear, that the policy of insurance was continued upon the property, and held by the appellee after the sale, for the benefit of the appellant as well as himself, and as a security to each to the extent of their respective interests in the property.

While it may be conceded that this arrangement could not give to the appellant the right to sue at law upon the policy, for want of legal privity with the contract of insurance ; yet, under such circumstances, the mortgagee would be treated in a Court of Equity as trustee for the mortgagor, and in the event of the payment of the mortgage debt by the latter, he would be entitled to maintain a suit in equity, to recover the money received by the former under the policy of insurance. This has been expressly decided by the Supreme Court of Pennsylvania, in *Insurance Co. vs. Updegraff*, 21 *Pa.*, 513, and that decision was followed by the same Court in *Reed vs. Lukens*, 44 *Pa.*, 200, 202.

In those cases there was a contract of sale, no conveyance had been made and mortgage taken by the vendor, as in this case ; but that fact does not in my opinion alter or affect the equitable rights of the parties. In those cases it

was held that the insurance having been effected by the vendor ; not exclusively for his own security, but for the benefit of the purchaser also; being an insurance not merely of his own interest, covering only the debt due him for the purchase money ; but being an insurance of the property itself, including the interest of the vendee therein, inured to the benefit of the latter. And the whole purchase money being paid, it was held that the vendor received the money from the insurance company as trustee for the purchaser, and was liable for it in equity to the latter. That principle applies to the present case.

The appellee being liable in a Court of Equity, to the appellant for the money received by him from the insurance company ; such liability was a sufficient consideration to support his promise, which gives to the appellant a right to maintain this suit; and to recover the money received by the appellee from the company, subject to be abated by any necessary or reasonable costs and expenses incurred by the appellee in collecting the same, and any premium paid by the appellee under the policy after the sale.

For these reasons I think the judgment below is erroneous, and as Judge MILLER concurs in this opinion and Judge STEWART is of the same opinion, for reasons assigned by himself, the judgment will be reversed and a new trial ordered.

*Judgment reversed, and*

*new trial ordered.*

(Decided 22nd June, 1875.)

STEWART, J., delivered the following concurring opinion:

Linthicum, the appellee, held a policy of insurance on the buildings upon certain property which he sold to Callahan, the appellant, on the 1st of June, 1869, taking a mortgage on the 5th of June, 1869, from him to secure the balance due of the purchase money.

The buildings were destroyed by fire in the following December, and Linthicum told Callahan he would try and get the insurance money, some $800, from the company, and if he got it, he would give it to him on the last payment of the mortgage; he promised to give it to him or allow it on the last payment of the mortgage.

The last payment was not then, but was afterwards made, and the mortgage debt was satisfied by Callahan. The insurance money was paid by the company to Linthicum, who then refused to pay it to Callahan, and this action was brought by him to recover from Linthicum the money so received.

Whether Callahan is entitled to enforce the recovery of the money is the question involved in the case.

The Court of Common Pleas, before which the case was tried, upon motion, instructed the jury that Callahan could not recover it; but I think there was error in this.

The promise made by Linthicum to Callahan was the acknowledgment of the equitable obligation resting upon him, resulting from their relations as vendor and vendee, or mortgagee and mortgagor, which afforded sufficient foundation for his promise. He is to be treated as the agent or trustee of Callahan under the circumstances, in receiving the money from the company, in pursuance of his promise.

After his mortgage debt was paid, he was indemnified; and the loss of the buildings by fire having fallen upon Callahan, he had a meritorious claim to the insurance money, the policy remaining unchanged by the conveyance to Callahan, and his execution of the mortgage to Linthicum.

The action for money had and received, is an equitable action and equally as remedial as a bill in equity, and the plaintiff, in support of it, can resort to all equitable circumstances incident to his case. *Kennedy vs. Balt. Ins. Co.,* 3 *H. & J.,* 367; *Murphy vs. Barron,* 1 *H. & G.,*

258 ; *Penn vs. Flack,* 3 *G. & J.*, 369 ; *State, use of Stevenson, vs. Reigart,* 1 *Gill,* 1 ; *Vrooman vs. McKaig,* 4 *Md.,* 350.

Under the 4th sec. of the Act incorporating the insurance company, the evidences of debt held by the company for premiums of insurance are made a *lien* on the property insured, no matter who may afterwards hold it.

No sale or transfer thereof subsequent to the insurance, can invalidate it. The *lien* thus imposed, it is provided by the law, is to be treated as a mortgage and to be collected as such, according to the stipulations of the policy of insurance, in case of fire ; the company has the election within ninety days after proof of the damage, to repair or replace the buildings, so as to put them in as good order as they were before the injury by the fire.

If the company had adopted this latter alternative ; Callahan would have had the benefit of their replacement, without liability over to Linthicum.

The election of the company to pay the money did not prejudice the rights of Callahan.

Linthicum having insured the buildings before the sale, and having conveyed the property to Callahan without reservation as to the insurance, holding the mortgage perpetuating his insurable interest; then held the policy to secure himself until his debt was paid, and afterwards, as the agent or trustee of Callahan, the mortgagor and owner of the property upon which the *lien* existed.

The collection of the insurance money by Linthicum, in lieu of the replacement of the buildings and under the promise to apply it to Callahan's use, must be taken as made in good faith, according to his assurance, for the use of Callahan, and could confer no right upon him to appropriate it to his own use. It was not his money, but money in the hands of the company which he promised to pay if he got it.

It would be an unwarranted construction to be put upon Linthicum's act, in the receipt of the money, to attribute to him the intent to claim it, and hold it as his own.

That he received it as the agent of Callahan, who had adopted the policy of insurance, is the just construction.

The subsequent adoption of a policy by a party interested, and for whose benefit it was designed, is equivalent to his prior order. *Newson's Adm'r vs. Douglass*, 7 *H. & J.*, 417.

The determination of Linthicum to receive the money on his own account, and so to hold it, would have been a manifest breach of his promise to Callahan, and a fraud upon him

It is not to be presumed that Linthicum collected the money with such intent, but for the use of Callahan.

The relations of the parties to the property insured, the *lien* on the same on account of the insurance, giving to Callahan any resulting benefit, and creating privity of interest in the contract of insurance between Linthicum and Callahan; the proffer of the former to collect the money for the latter, are all considerations plainly prescribing Linthicum's duty and obligation.

After deducting for any reasonable charges in its collection, Linthicum was bound to apply it to the use of Callahan, who is entitled to recover the same in this action according to the facts set out in the record. I think the judgment should be reversed and new trial ordered.

ALVEY, J., delivered the following dissenting opinion in which Judge GRASON concurred:

Upon what principle the plaintiff in this action founds his claim to recover it is rather difficult to imagine. The insurance was neither in his name, nor for his benefit and protection, but was a mere personal contract between the insurance company and the defendant, with which the plaintiff had no privity or concern whatever. And this

being the case, the promise relied on, made by the defendant to the plaintiff after the loss by fire had occurred, but before the money had been paid by the insurance company, was a mere *nudum pactum*, being without a valid consideration.

The plaintiff seeks to recover of the defendant the money received of the insurance company as money had and received to his, the plaintiff's use ; and, in order to maintain the action, it should be shown that the defendant stood in the relation either of trustee or agent to the plaintiff, and that the money received by the former justly belonged to the latter, and that it was received under such circumstances as would give rise to an implied promise by the defendant to pay it over to the plaintiff.    Unless there was such right or interest of the plaintiff in the money received by the defendant as would give rise to an implied promise to pay, it would seem to be certain that there was no sufficient consideration for an express promise to pay, in view of the facts of this case.

Now, I am not aware that it has ever been questioned, since the case of *Lynch vs. Danzell*, 4 *Bro. Parl. Rep.*, 432, that a policy of insurance against loss by fire is any thing more than a mere personal contract against an apprehended loss on account of the interest of the insured in the particular subject-matter ; and that it does not attach to the realty, nor in any manner pass therewith as an incident thereto, by conveyance or assignment, without some special stipulation to that effect, between the insurer and the insured.    This proposition is maintained by all the authorities.

In this case, when the insurance policy was originally issued to the defendant, it was upon his proprietary interest in the premises, but, upon the sale of the premises to the plaintiff, the policy was continued by consent of the insurance company, as an insurance of the vendor's interest in the property as security for the unpaid purchase

money, or as an insurance of the mortgage debt due from the vendee.   In either case, there was sufficient insurable interest in the defendant to sustain the policy.   But, by this change of proprietary right in the premises, there was a corresponding change in the rights of the defendant under the contract of insurance.   From the time of the sale, the insurance was simply of the debt as the subject-matter, and not the property itself.   The distinction between an insurance by a mortgagee, and an insurance by a mortgagor, is well stated by Mr. Justice STORY, in delivering the opinion of the Supreme Court of the United States, in the case of *Carpenter vs. The Providence Washington Ins. Co.*, 16 *Pet.*, 501.   It is there said : " No doubt can exist, that the mortgagor and the mortgagee may each separately insure his own distinct interest in the property. But there is this important distinction between the cases, that where the mortgagee insures solely on his own account, it is but an insurance of his debt ; and if his debt is afterwards paid or extinguished, the policy ceases from that time to have any operation ; and even if the premises insured are subsequently destroyed by fire, he has no right to recover for the loss, for he sustains no damage thereby ; neither can the mortgagor take advantage of the policy, *for he has no interest whatsoever therein.*   On the other hand, if the premises are destroyed by fire before any payment or extinguishment of the mortgage, the underwriters are bound to pay the amount of the debt to the mortgagee, if it does not exceed the insurance.   But, then, upon such payment, the underwriters are entitled to an assignment of the debt from the mortgagee, and may recover the same amount from the mortgagor, either at law or in equity, according to circumstances ; for the payment of the insurance by the underwriters *does not, in such a case, discharge the mortgagor from the debt, but only changes the creditor.*   Far different, however, is the case where an insurance is made by the mortgagor ·on the premises on his own account ;

for, notwithstanding any mortgage or other incumbrance upon the premises, he will be entitled to recover the full amount of his loss, not exceeding the insurance ; since the whole loss is his own, and he remains personally liable to the mortgage or other incumbrance, for the full amount thereof.'' These principles were taken in that case to be unquestionable, and the necessary result of the doctrines of law applicable to insurances by the mortgagor and the mortgagee ; and if they are there correctly expounded, they would seem fully to embrace and conclude this case.

Indeed, it would seem to be too well established for question, that where a mortgagee insures for himself and at his own expense, he is entitled to receive the insurance money to his own use, if the mortgage debt has not been paid before the occurrence of the loss, and that, as between the mortgagee and mortgagor, the payment to the former by the insurance company of the amount of the policy, does not operate a payment *pro tanto* of the mortgage debt, but that the mortgage still remains a valid security for the full amount due thereon, at the time of the loss, against the mortgagor, and that the latter has no interest in or concern with the money received from the insurance company.  As we have seen, this is decided by the case of *Carpenter vs. The Providence Washington Ins. Co.*, before referred to, and in addition to that case, the same principle has been explicitly decided in several other well considered cases, and is stated as the settled law by the text writers upon the subject.   *White vs. Brown*, 2  *Cush.*, 412 ;  *King vs. State Mut. Fire Ins. Co.*, 7  *Cush.*, 1 ;  *Suffolk Fire Ins. Co. vs. Boyden*, 9  *Allen*, 123 ;  *Cushing vs. Thompson*, 34  *Me.*, 496 ;  *Concord Mut. Fire Ins. Co. vs. Woodberry*, 45  *Me.*, 447 ;  2 *Phill. on Ins.*, sec. 1712 ;  *May on Ins.*, sec. 456 ;  *Flanders on Ins.*, 360, 361.

. In the case of *King vs. State Mut. Fire Ins. Co*, just referred to, it was further maintained, in an elaborate opinion by the late Chief Justice SHAW, that there was no

Callahan *vs.* Linthicum.

right of subrogation in such case, and consequently the mortgagee could not, after receiving the insurance money, be compelled to assign the mortgage debt, or any part of it, to the insurers ; that the insured was entitled to receive and retain to his own use, not only the insurance money, but the mortgage debt also. But this position is in conflict with the decided weight of authority, and has not been followed by the other Courts of the country ; and it may now be regarded as settled, that the right of subrogation does exist, and in case of loss, the insurance company, upon payment of the amount of the mortgage debt, or less, is entitled to be substituted to the rights of the mortgagee, and may recover from the mortgagor the amount thus paid. *The Ætna Fire Ins. Co. vs. Tyler*, 16 *Wend.*, 385 ; *Ins. Co. vs. Woodruff*, 2 *Dutch.*, 541. And conceding this to be the law, it would seem to follow conclusively that the money received from the insurance company by the defendant was not received to the use of the plaintiff, nor could the latter have any right or interest therein.

For the reasons stated, I think the judgment appealed from should be affirmed ; and I am authorized by Judge GRASON, to say that he concurs with me in this opinion.