## PRODUCT SALES COMPANY *vs.* GUARANTY COMPANY OF MARYLAND.

*Construction of Contract—Interest Charges—Settlements on Wrong Basis—Effect.*

Where a loaning company agreed to "buy" accounts from time to time from another company, paying to the latter 100 per cent. of the net face value thereof, "less a charge equal to the legal rate of interest on the money outstanding thereon, on which 77 per cent. of the net face value" should be paid on acceptance of the accounts, and the remaining 23 per cent. when they were finally settled, with interest at one per cent. per month, plus the legal rate of interest, *held* that interest was to be charged on the 77 per cent. of the face value of accounts. which was actually advanced, and not on their full face value.
                                             p. 681

That, in the course of settlements extending over several years, in connection with loans made under a general contract therefor, the borrower submitted to erroneous exactions of interest, did not affect the proper interpretation of the contract, there being no ambiguity in that regard therein.        p. 682

*Decided January 14th, 1925.*

Appeal from the Baltimore City Court (HEUISLER, J.).

Action by the Guaranty Company of Maryland against the Product Sales Company. From a judgment for defendant, plaintiff appeals. Reversed.

The cause was argued before URNER, ADKINS, OFFUTT, DIGGES, BOND, and PARKE, JJ.

*Richard S. Culbreth* and *Jacob Voloshen,* with whom were *Voloshen & Voloshen* on the brief, for the appellant.

*Lee I. Hecht* and *Webster C. Tall,* for the appellee.

URNER, J., delivered the opinion of the Court.

The decision in this case depends upon the construction of an agreement between the Product Sales Company, designated as party of the first part, and the Guaranty Company of Maryland, as party of the second part, which includes the following provision:

"Second party will from time to time, during the continuance of this agreement, and within the limits agreed upon, buy such accounts belonging to first party, as may be acceptable to second party, and will pay therefor.

"One hundred per cent. (100%) of the net face value thereof, less a charge equal to the legal rate of interest on the money outstanding thereon, on which 77 per cent. of the net face value thereof shall be paid in cash upon acceptance thereof by second party, and the remaining 23 per cent. less any deductions and plus any overpayments by the debtors and less total charges, as shown in lines 51 to 61 hereof, to be paid to the first party immediately upon payment of any such accounts to second party, * * *"

The provision as to the total charges is as follows:

"The total compensation to be paid by first party for all services and other considerations specified in lines 13 to 17 hereof, added to the charge as mentioned in lines 13 and 14 hereof, it is hereby agreed shall be 1/30 of 1% per day (1% per month), making total charge for all services 1/30 of 1% plus the legal rate of interest."

Lines 13 to 17 of the agreement are embraced in the second of the three paragraphs we have quoted.

The service for which the contract provided, in addition to the advance of money to the defendant, consisted chiefly of extending the privilege of utilizing the plaintiff's collection and credit departments and the advice of its officers as to bookkeeping and business efficiency. The record does not show whether the defendant availed itself of those privileges.

No question of usury is raised, and such a defense would not be maintainable under the laws of this State, since the defendant is a corporation. Code, art. 23, sec. 100A; *Kinsey* v. *Drury,* 146 Md. 227.

The question is whether the monthly charge of one per cent. plus the legal rate of interest, making a total charge of eighteen per cent., should be computed on the full amount of the "net face value" of the accounts transferred, or only upon the seventy-seven per cent. of such value actually advanced. In this suit to recover from the Product Sales Company a balance of $1,623, claimed on the first of the alternative theories just stated, the Guaranty Company requested and obtained instructions that "the defendant agreed to pay to the plaintiff interest and charges based upon 100% of the face value of accounts receivable assigned by the defendant to the plaintiff, as collateral security, for loans advanced by the plaintiff to the defendant," and that "under the terms of the written contract entered into between the plaintiff and defendant and in evidence in this case, the plaintiff is entitled to receive from the defendant total compensation of 18% on the face value of accounts assigned by the defendant to the plaintiff as collateral security for loans."

Prayers offered by the defendant limiting the computation of the interest charged to the amounts actually advanced on the accounts were refused by the lower court.

The trial resulted in a verdict in favor of the plaintiff for $1,828.30, being the full amount of its claim and interest from the date of the suit. From the judgment entered on the jury's verdict the defendant has appealed. The only exception in the record relates to the ruling on the prayers.

While the contract used terms of purchase in reference to the transfer of accounts from the defendant to the plaintiff, its evident purpose was to provide for financial transactions in the nature of loans on the security of the accounts to be assigned. This theory was distinctly stated in the prayers which the plaintiff corporation itself offered and in accordance with which the verdict was rendered. It was provided

by the contract that the defendant assignor should have the right to collect the accounts from the debtors, after the assignment, and that until payment to the plaintiffs of their face value the defendant should pay compensation at the rate of one per cent. monthly plus legal interest. The purposes of a series of loans were thus accomplished by transactions which were described as purchases in the contract. Analogous contracts were so construed in *Home Bond Co.* v. *McChesney,* 239 U. S. 568; *Dorothy* v. *Commonwealth Commercial Co.,* 278 Ill. 629; and other cases cited in L. R. A. 1917-E, 1122. It is conceded that the verdict was for a proper amount if the plaintiff had a right to calculate the eighteen per cent. charges upon the amount of the net face value of the assigned accounts. On the other hand there was proof that if the charges ought to be reckoned only upon the amounts advanced to the defendant under the contract, the plaintiff's claim has been over-paid.

In providing for the payment of one hundred per cent. of the net face value of the accounts, "less a charge equal to the legal rate of interest on the money outstanding thereon, on which 77 per cent. of the net face value" should be paid on acceptance of the accounts, and the remaining twenty-three per cent. when they were finally settled, the contract made a clear distinction between their face value and the amounts advanced upon them to the defendant at the time of their transfer. If the interest was to be charged on the face value of the accounts, notwithstanding the fact that only seventy-seven per cent. of that value was advanced, the agreement would certainly have so stated, instead of substituting for the term "face value" the words "money outstanding thereon," as a designation of the amount upon which the interest should be computed. The subsequent provision for compensation at the rate of one per cent. monthly in addition to the legal interest rate does not change the basis of the calculation. It simply adds the monthly rate to the legal interest charge previously specified. The only described basis of any charge was the "money outstanding." So far

as the provision for the payment of interest or other compensation to the plaintiff was concerned, the only money outstanding was that advanced when the accounts were accepted. In our opinion the plain intent of the contract was to make the money actually advanced the basis of the total eighteen per cent. charge for which it provided.

It is argued that a different interpretation of the contract is required because during the course of a long series of settlements under its terms the interest and other charges deducted by the plaintiff were calculated upon the face value of the accounts which had been assigned. If the agreement were ambiguous as to the basis of the charges, the conduct of the parties could be considered upon the question as to its proper construction. But as there is no uncertainty in its provision as to the amounts upon which the interest and additional compensation must be computed, the submission of the defendant to erroneous exactions in the course of the previous accounting should not control our decision as to the meaning and effect of the contract in regard to the liability asserted in this action. *Citizens' Fire Insurance Co.* v. *Doll*, 35 Md. 89; *Calhan* v. *Linthicum*, 43 Md. 103; *Buffalo Steel Co.* v. *Kirwan*, 138 Md. 66; 13 C. J. 548; 6 R. C. L. 854.

There was error in the instruction, granted at the plaintiff's request, which declared the meaning of the contract between the parties to be that the defendant was liable for interest and other charges at the rate of eighteen per cent. o fthe full face value of the accounts assigned to the plaintiff, and the judgment must be reversed because of that ruling.

*Judgment reversed, with costs, and new trial awarded.*