## BURTON ROUNTREE & CO. v. BAILEY & COLLINS. (No. 9322.)

(Court of Civil Appeals of Texas. Dallas. Feb. 21, 1925. Rehearing Denied April 4, 1925.)

**1. Appeal and error ⊜719(6)—Direction of verdict fundamental error apparent of record.**

Directing verdict is fundamental error apparent of record, and court need not scrutinize assignments of error to determine questions raised.

**2. Bills and notes ⊜256—One secondarily liable on note discharged when instrument discharged.**

Under Uniform Negotiable Instruments Act (Vernon's Ann. Civ. St. Supp. 1922, art. 6001—120, subd. 1, and article 6001—192), one secondarily liable on a note is discharged by any act that discharges the instrument.

**3. Guaranty ⊜59—One secondarily liable on notes held discharged by payment under insurance policy given to secure payment of notes.**

Where, pursuant to agreement between automobile dealer and securities company, note for unpaid purchase money on sale of automobiles and mortgage to secure them were assigned to securities company, with guaranty of payment of notes by dealer, and conversion insurance was taken out in name of securities company to better secure payment of notes, *held* that, where loss occurred on contingency insured against, proceeds of policy took place of automobile, and payment made by insurer to securities company inured to benefit of dealers and discharged debt as to them.

Appeal from Dallas County Court; W. N. Coombes, Judge.

Action by Bailey & Collins against Burton Rountree & Co. Judgment for plaintiffs, and defendants appeal. Reversed and rendered for defendants.

Muse & Muse, of Dallas, for appellants.
Lawther, Pope, Leachman & Lawther, of Dallas, for appellees.

LOONEY, J. Judgment below was rendered on an instructed verdict for appellees.

The pleadings properly presented the issue discussed herein.

The evidence, in our opinion, justifies the following conclusions of fact: Appellants, a partnership, dealers in automobiles in the city of Dallas, had an arrangement with the Guaranty Securities Company, a corporation of said city, to discount their customers' notes taken for unpaid purchase money on sales of automobiles. The securities company furnished appellants with blank notes, contracts, etc., to be used in closing up deals. It was understood that 9 per cent. of the retail price of the automobile should enter into and become a part of the amount of the note, which was to be secured by a mortgage on the automobile. This amount, added to the retail price of the car, to wit, 9 per cent., was to pay interest on the note to maturity and premiums for fire, theft, and conversion insurance to be taken out on the car as additional security for the debt.

Appellants were to assign the customer's note and mortgage to the securities company and guarantee the payment of the note. The securities company, in consideration for this, was to pay appellants the amount of the note, less the prearranged discount of 9 per cent., deducted for the reason above stated; that is, to cover the amount of interest on the note to maturity and to pay premiums for insurance.

Bailey & Collins were attorneys in fact for the American Lloyds, an association of subscribers doing an insurance business in the city of Dallas, selling theft, fire, conversion, and other coverages of insurance on automobiles. The securities company had an arrangement with Bailey & Collins allowing it 25 per cent. of all premiums on insurance written on automobiles upon which it held mortgages, and the company was authorized to write the fire and theft insurance. For this purpose, W. W. Macbeth, its secretary, was appointed nominal agent by Bailey & Collins; the real agent, however, the one receiving the benefit of the commission, was the securities company.

For reasons satisfactory to the parties, policies intended to protect against loss by reason of the conversion or criminal misappropriation of the automobile by the mortgagor himself, or theft thereof with his connivance, were to be written directly by Bailey & Collins.

On August 20, 1920, appellants sold a Buick automobile to one R. D. Williams. Its retail price was $1,875, to which was added $168.75, being 9 per cent. thereof, making a total of $2,043.75, from which amount was deducted the payment of $800, leaving a balance of $1,243.75, for which a note was taken payable to the order of appellants in 10 monthly installments of $124 each, except the last installment was for the sum of $127.75; all bearing 10 per cent. interest per annum after maturity, providing for 10 per cent. attorney's fees and accelerated maturity for failure to pay any installment, and was secured by a mortgage on the automobile.

This note, and the mortgage on the automobile given by Williams to secure the same, were assigned in writing to the securities company by appellants, they guaranteeing the payment of the note. Under the arrangement, the securities company was to, and did, look after the question of obtaining insurance and, through its secretary, Macbeth, issued on behalf of appellees a policy protecting the holder of the note against loss from fire and theft. This policy was issued

⊜For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

to R. D. Williams as assured, loss payable to the securities company, mortgagee. The securities company also caused a policy to be issued by appellees protecting the mortgagee against loss by reason of the conversion or criminal misappropriation of the automobile by the mortgagor, or by reason of the theft thereof at his connivance. This policy was issued to the Guaranty Securities Company, as assured, but was in pursuance of the plan arranged between the parties to procure insurance for the protection of the mortgagee or the holder of the note.

It was also understood that the securities company should make report to appellants in regard to the insurance issued on these automobiles.

R. D. Williams, the purchaser—mortgagor, absconded, taking the car; in other words, converted the same, within the meaning of the policy. The securities company demanded of appellees indemnity for the loss sustained, and the matter was settled by appellees paying to the company the amount of the unpaid balance of the note and accumulated interest. This payment of loss was made in accordance with one of the settlements authorized by the policy.

When this adjustment and payment were made, appellees required the securities company to transfer the note and mortgage to them, which it did, by a written transfer without recourse.

This is the note sued on, and it had matured when the transfer was made.

[1] Appellants, in several assignments and propositions, complain that the action of the court in directing a verdict for appellees was not only unauthorized by the evidence, but was against the evidence in several respects. As we view the case, it will not be necessary to scrutinize closely the assignments to determine the questions raised therein, for the reason that, in the light of the undisputed evidence, the action of the court in directing a verdict for appellees was fundamental error, apparent of record. Owens v. Corsicana Pet. Co. (Tex. Civ. App.) 169 S. W. 194.

[2] As the liability of appellants on the note was secondary (Uniform Negotiable Instruments Act, Vernon's Ann. Civ. St. Supp. 1922, art. 6001—192), it was discharged by any act that discharged the instrument (Id. art. 6001—120, subd. 1).

[3] The question for our determination is, what, if any, beneficial interest appellants had in the conversion insurance, and whether the payment of the loss thereunder by appellees to the securities company discharged the note as to appellants.

The insurance, although effected in the name of the Guaranty Securities Company, was taken out to better secure the payment of the note executed by Williams, for the payment of which appellants were secondarily liable. This is not a case where the mortgagee, at his own expense and without agreement with other interested parties, obtains insurance to protect his interest. In such a case, neither the mortgagor nor others liable on the note would have any interest in the proceeds of the policy after loss; the mortgage debt would not be discharged on payment of the loss, and, in such a situation, the mortgage debt could, with perfect propriety, be assigned to the assured by the holder.

The insurance under consideration was effected at the instance of the mortgagor, the appellants, and the securities company, and at the expense primarily of the mortgagor, and, secondarily, of appellants, who had guaranteed the payment of the note.

The insurance was as much for the protection of appellants against loss by reason of their secondary liability on the note as it was for the protection of the Guaranty Securities Company against loss as the holder of the note. It is immaterial, under the circumstances, that the policy was written in the name of the Guaranty Securities Company as assured, for the reason that, in taking out the insurance, the company acted not only for itself but also for appellants.

A loss having occurred, upon the contingency insured against, the proceeds of the policy took the place of the automobile, and the payment made by appellees to the Guaranty Securities Company inured to the benefit of appellants and discharged the debt as to them. Callahan v. Linthicum, 43 Md. 97, 20 Am. Rep. 106; Pendleton v. Elliott, 67 Mich. 496, 35 N. W. 97; Waring v. Loder, 53 N. Y. 581, 9 Ann. Cas. 66; Land Mtg. Investment, etc., Co. v. Dillam, 49 S. C. 345, 26 S. E. 990, 29 S. E. 203.

For the reasons hereinbefore stated, we are of the opinion that the case should be reversed, and, as it is not necessary to remand the cause for the ascertainment of facts, and as the matter to be decreed is certain, this court will render such judgment as the court below should have rendered; that is, judgment for appellants.

Reversed and rendered.