## The Farmers' Mutual Insurance Company of Lancaster *versus* Graybill.

1. Real estate of a decedent, the buildings on which were insured, was sold at Orphans' Court sale; before its confirmation the buildings were burned; *Held*, that the sale was not such alienation as to avoid the policy.

2. The suit on the policy was properly brought in the name of the administrator to the use of the vendee; who had sufficient interest to give notice of the loss.

3. By resolution of directors "not more than three-fourths of the value

of any buildings shall be insured ;" members already insured agreed, that in case of loss they would "only claim three-fourths of the amount of the actual loss, and for the contents of merchant mills (&c.,) only three-fourths of one-half of the actual loss, provided three-fourths of the amount as aforesaid does not amount to more than three-fourths of the amount insured." Three-fourths of a loss exceeded three-fourths of the amount insured: *Held,* the insured could recover the whole amount insured.

4. Hill *v.* Cumberland Valley Mutual Protection Co., 9 P. F. Smith 474, followed.

May 6th 1873.   Before READ, C. J., AGNEW, SHARSWOOD, WILLIAMS and MERCUR, JJ.

Error to the Court of Common Pleas of *Lancaster county:* No. 42, to May Term 1873.

On the 26th of July 1870, Abraham Forney, administrator, &c., of Graybill B. Forney to the use of Henry B. Graybill, brought an action of covenant against the Farmers' Mutual Insurance Company of Lancaster county to recover for the loss by fire of property insured under a policy made April 13th 1857 to G. B. Forney.   The property was a two-storied mansion-house, valued at $3000 and insured for $2000.   The company was mutual, and by the charter all persons insuring became members.

Amongst other by-laws were the following :—

"Sect. 8. When any member sustains a loss by fire, it shall be his or her duty immediately to give notice thereof to the president or secretary, who shall furnish him or her with an order on the appraisers, requiring them to view the premises, and after hearing the necessary evidence, to value and determine the amount of loss actually sustained, not exceeding the insured value of the property so destroyed, and make report to the secretary within ten days.

"Sect. 12. When any property insured by this company shall be aliened by sale or otherwise, the policy shall therefore be void and shall be surrendered to the directors to be cancelled.   But the purchaser or purchasers may have all the advantages of the insurance : Provided, notice to that effect be given to the secretary within thirty days after such sale or transfer, and otherwise complying with the requisitions of the company.

"Sect. 16. Not more than three-fourths of the actual cash value of any buildings or property shall be insured by this company; and on dry goods and grocery stores, and the contents of merchant mills, only three-fourths of one-half of the actual cash value will be insured." * * *

On the 3d day of January 1859, the following resolutions were passed by the directors of the company :—

"Resolved, That the intention of the directors is, and has been, that the construction of the policies should be governed by the 16th section of the by-laws, which provides that, not more than three-fourths of the actual cash value of any building or property shall be insured by this company, and on dry goods and grocery stores, and the contents of merchant mills, only three-fourths of

one-half of the actual cash value will be insured, according to the following resolution :

"Resolved, That in all policies, hereafter issued, it shall be plainly stipulated and expressed, that only three-fourths of the actual loss will be paid by the company, and on dry goods and grocery stores, and the contents of merchant mills, only three-fourths of one-half of the actual loss, will be paid by the company.   The actual loss to be ascertained by the appraisers ; and in case of an appeal, by three disinterested men chosen according to the by-laws.

"Resolved, That the directors shall take measures to procure the assent of each member of the company to the construction' expressed in the foregoing resolution, and for that purpose shall provide a book or books, in which such assent shall be fully and fairly expressed and set forth, and shall cause each member of the company to be waited on, and his, her or their signatures obtained for the purpose of expressing their assent to such a construction of their policies."

The agreement referred to in the foregoing resolution is dated January 10th 1859, and is as follows :—

"We, the subscribers whose names are hereto attached, having our respective properties insured in the Farmers' Mutual Insurance Company of the County of Lancaster, hereby agree that (to avoid all doubt or difficulty) in case any loss should occur to our respective properties by fire, we will only claim and receive three-fourths of the amount of the actual loss, and for the contents of merchant mills, and dry goods and grocery stores, only three-fourths of one-half of the actual loss, provided three-fourths of the amount as aforesaid does not amount to more than three-fourths of the sum insured."

This agreement was signed by G. B. Forney.   He died on the 12th day of October 1869.

On the 8th of January 1870, Abraham Forney, under an order of the Orphans' Court, sold the real estate of the decedent, on which the building insured was erected, for the payment of his debts.   The property was struck down to Hiram G. Dysinger, who on the 17th of January assigned his interest in the purchase to H. B. Graybill the use plaintiff in this case.   The order of sale was returnable February 14th, and the purchase-money was payable April 1st 1870.   On the 7th of February the building was burnt; on March 21st, after exceptions, the sale was confirmed to Dysinger, and deed made April 1st 1870, by the administrator to him.   The deed was assigned by Dysinger to H. B. Graybill, and the assignment endorsed on it.

On the trial, October 25th 1872, before Livingston, P. J., the foregoing facts appeared in evidence.   H. B. Graybill testified that the house was destroyed by fire about midnight on February 7th 1870.   In the morning he, with Albert Carpenter, Esq., who was

of counsel with the administrator of G. B. Forney, and who had the policy in his possession, gave notice of the fire to Andrew M. Frantz, Esq., the secretary of the company. The building was worth about $3200. Witness gave the notice as owner of the property.

Other witnesses were examined as to value of the building; they fixed the value at $3000. The defendant, amongst other evidence, offered to prove that when the agreement to the resolutions was presented to G. B. Diller for his signature, "its object and intentions " were fully explained to him; also, that after the agreement new policies were issued to remedy the defect complained of in the agreement; also, that since the agreement it had been the custom of the company to pay three-fourths of the actual loss provided the amount was not more than three-fourths of the sum insured; also, the general custom of the company since 1859. All these offers were objected to by the plaintiff, rejected by the court, and several bills of exception sealed.

The defendants submitted a number of points, which are stated and answered in the charge of the court. The charge, after recapitulating the evidence, stating the agreement of January 10th 1859, and referring to clauses in the constitution and by-laws, is as follows :—

" * * * These we think are the only portions of the by-laws to which we need at present refer.

"[This cause seems to resolve itself into four legal propositions, and to leave but little for a jury to decide:

"1st. Can the plaintiff maintain this action ?

"2d. Was there an alienation of the property in this case at the time of the fire, whereby the policy became void ?

"3d. Was the notice given to the secretary sufficient notice in law ? and

"4th. If the plaintiff is entitled to recover, how much is he to recover under his policy and the agreement of January 10th 1859 ?]

" The defendant has presented several points in writing to the court, covering all these propositions, and indeed the whole case. These we will now proceed to answer :

"1st point : ' That by the sale of the property insured, as set forth by the plaintiff in his declaration, the policy of insurance was made null and void · under the charter and by-laws of the company.'

"Answer: The sale of the property insured (and burned) as shown by the pleadings and evidence in this cause, did not render the policy of insurance null and void under the charter and by-laws of the company, it being merely a contract of sale (not executed), the sale not having at the time of the fire been approved by the court ; no purchase-money paid, or deed made : there was no alienation.

" The 2d and 3d points will be considered together.

⌊Farmers' Mutual Insurance Co. *v.* Graybill.]

"2d point. That the plaintiff is an entire stranger as regards the defendant, and has no rights either legal or equitable on the policy of insurance granted to Forney.

"3d point. That the policy in this case cannot be made available to Henry B. Graybill, who did not purchase from Forney's administrators, but bought the right and interest of Dysinger, and that only.

"Answer : The legal plaintiff on the record was not a stranger to the policy or company at the time of the fire, nor was the party for whose use this suit was brought. He was, as shown by the evidence, the vendee at the time, and became the legal owner, and the vendee, the legal plaintiff here, became in law trustee for him, and the policy thus became available for him, and he is entitled to the proceeds of it.

"4th point. That no notice of the loss was given by or for the member insured as required by the by-laws.

"Answer: Graybill B. Forney, the *member insured,* having died previous to the destruction of this property by fire, could scarcely be expected to give notice thereof *immediately* to the president or secretary of the company, as required by the by-laws before us. *If interpreted as they read,* literally, no policy issued by this company would be of any value whatever in case of the death of the insured and the destruction of the property by fire, for no notice could be given. The insured member could not give it, and no provision is made for notice by any one else. In the present case Henry B. Graybill, for whose use this suit is brought (the then vendee) took with him (as he thinks), A. E. Carpenter, Esq., a member of the bar, and who is shown by the records of the Orphans' Court offered in evidence by the defendant, to have been at the time counsel for the estate of Graybill B. Forney, deceased, the insured, and who then had in his possession this policy, and proceeded to the office of the secretary immediately on the morning after the fire, and gave him full notice of the entire destruction of the property insured, by fire, stating to him what property it was and that it was totally destroyed. The secretary received the notice, and we think it sufficient in law. The proceedings to ascertain loss, after notice, were to be instituted by the company, as their by-laws show.

"5th point. That Graybill B. Forney, being a party to the agreement in 1859 fixing the amount of losses that would be paid, and having ratified the basis for adjusting such losses, he and his administrators are bound by it.

"Answer : By section 16th of the by-laws, not more than three-fourths of the actual cash value of any buildings or property shall be insured in this company. It seems that after the enactment of this section, a doubt arose in the minds of some of the members of this company as to its exact meaning, and on January 10th

[Farmers' Mutual Insurance Co. *v.* Graybill.]

1859, after this policy was issued, they, to avoid all doubt and difficulty, entered into an agreement (and this being a mutual company, and all its members insured, they are all bound by any legal agreement by them made), which, so far as this class of property is concerned, may be thus read : ' We, the subscribers whose names are hereto attached, having our respective properties insured in the Farmers' Mutual Insurance Company of the County of Lancaster, hereby agree that in case any loss should occur to our respective properties by fire, we will only claim and receive three-fourths of the amount of the actual loss ; provided three-fourths of the amount aforesaid does not amount to more than three-fourths of the sum insured.' By that section of the by-laws, no more than three-fourths of the actual cash value was to be insured, but the company was obliged to pay the whole sum stated *in the policy issued, even if it exceeded three-fourths of the actual cash value, or if the actual damage by fire was not half so much as the sum insured.* To remedy this they needed an agreement; they made one, and stipulated that in no case would they receive, or pay more than three-fourths of the actual loss; and add, provided three-fourths of the amount does not amount to more than three-fourths of the sum insured. This we take to mean that when the amount of the actual loss does not exceed three-fourths of the actual value of the property insured (three-fourths of the actual cash value being their basis), they were to pay and receive three-fourths of the sum insured. But if the actual loss exceeded three-fourths of the actual cash value of the property insured, they were to pay and receive three-fourths of the actual loss, and not three-fourths of the sum insured. If this construction be proper, and we believe it is, the actual loss here being more than three-fourths of the actual value of the property insured, the company are bound to pay the whole sum insured, it being less than three-fourths of the actual loss shown.

" 6th point. That under no circumstances can the plaintiff recover more than three-fourths of $2000, the insured amount.

"Answer : Under the evidence in the cause the plaintiff is entitled to recover the full amount stated in the policy presented, with interest from the time therein fixed for its payment, or from the time it became due and payable.

" This answers all the points, and if the jury believe with us, their verdict should be for plaintiff for the amount stated."

The verdict was for plaintiff for $2302.33.

The defendants took a writ of error. They assigned for error :—

1–3. Rejecting their offers of evidence.

5. The clause of the charge in brackets.

6–9. The answers to the defendants' 1st, 2d, 3d, 5th and 6th points.

10. The construction of the agreement of January 10th 1859.

[Farmers' Mutual Insurance Co. *v.* Graybill.]

*A. M. Frantz* and *N. Ellmaker*, for plaintiffs in error.

*O. J. Dickey* and *T. E. Franklin*, for defendant in error.

The opinion of the court was delivered, July 2d 1873, by

SHARSWOOD, J.—It is clear both upon principle and authority, that by sale of the premises insured under the proceedings in the Orphans' Court, there was no such alienation before confirmation as avoided the policy; and the loss having occurred between the sale and the confirmation, the legal title was then in the heirs of Forney, and the action on the policy was rightly brought in the name of the administrator to the use of the vendee: Insurance Company *v.* Updegraff, 9 Harris 513; Reed *v.* Lukens, 8 Wright 200; Hill *v.* Cumberland Valley Mutual Protection Co., 9 P. F. Smith 474.

It is equally clear that the vendee had sufficient interest to entitle him to give notice to the company of the loss. As was well remarked by the learned judge below, if the clause be literally taken, in case the member insured was dead at the time of the fire, no one could give notice.

His personal representative, succeeding to his legal right as covenantee, is a trustee for the heirs of the vendee, and either the trustee or the cestui que trust sufficiently represent the party for that purpose. In the case before us, it appeared that both joined in the notice, which was received by the secretary of the company without objection.

It must be conceded that there is some difficulty as to the legal construction of the agreement given in evidence, signed among others, by the insured member, Graybill B. Forney. This paper was drawn up in pursuance of certain resolutions of the directors of the insurance company, to a copy of which it is attached. The whole must be considered as one instrument, and be construed together. The principle intended to be adopted by the company, was that every member insured, should stand his own insurer to the extent of one-fourth of any loss which should occur. This was for the safety of the company, to induce care as well as honesty on the part of the insured, as he must himself be a loser by every fire, and could not throw his entire loss upon the insurers. The sixteenth section of the by-laws had declared, that not more than three-fourths of the actual cash value of any building or property should be insured. In all cases of total loss, this accomplished the purpose. But it is evident, that when the loss was only a partial one, the insured might still claim his entire loss, provided it did not exceed the sum insured. This was not their meaning, and it did not secure the result at which they aimed. The directors, therefore, adopted a resolution that, in all policies thereafter issued, it should be plainly stipulated and expressed that only three-fourths

[Farmers' Mutual Insurance Co. *v.* Graybill.]

of the actual loss should be paid by the company, and also resolved that the assent of the holders of existing policies should be procured to this as the true construction of their contracts. The agreement, however, which was to carry out this last resolution, was not confined to the exact words of the directors, but added a clause which has given rise to the question here. By it the subscribers "agree that (to avoid all doubt and difficulty) in case any loss should occur to our respective properties by fire, we will only claim and receive three-fourths of the amount of the actual loss, provided three-fourths of the amount, as aforesaid, does not amount to more than three-fourths of the sum insured." It is plain that the insertion of this proviso was altogether unwarranted by the resolutions, and had the directors been so inclined, they might have repudiated the entire agreement in consequence of it. But they have approved it, and now insist that it is to be construed as if it had read "provided, and it is further agreed, that in no case shall any more than three-fourths of the sum insured be paid." That is, if a person having *exempli gratia*, a property, the cash value of which is $4000, has insured it according to the sixteenth by-law for $3000, if the entire property is consumed by fire, he shall be entitled to receive, not three-fourths of his actual loss, namely, $3000, but only $2250. Yet if he suffers only a partial loss of $3000, he shall still be entitled to recover the same sum of $2250. Instead, then, of the insured being limited to three-fourths of his actual loss when his loss is total, on the construction now contended for, he is entitled only to three-fourths of three-fourths or nine-sixteenths, little more than one-half. This could not have been the intention of the parties, and it is not the proper grammatical construction of the writing. A simple proviso, without other words extending its operation, so as to make it a distinct and independent covenant, is a condition on the performance of which the validity of the deed or writing depends: Wharton's Law Lexicon, *ad verbum*. The agreement was not, therefore, to apply where three-fourths of the amount of the actual loss shall exceed three-fourths of the sum insured. In the case before us, three-fourths of the actual loss does amount to more than three-fourths of the sum insured. The agreement then is inapplicable. The insured is entitled to recover the whole sum insured, but as, by the sixteenth by-law, this is only three-fourths of the actual value, the spirit of the agreement is maintained. This must be so in every total loss, the sum insured being only three-fourths of the actual cash value, the loss must of necessity be more than three-fourths of the sum insured. We hold the agreement not to have been intended to reach the case of a total loss, already provided for sufficiently by the sixteenth by-law. It is to be observed also, that the agreement was executed to give a construction to the existing contracts, not to make an entirely new rule. It declares that it is "to avoid doubt or diffi-

[Farmers' Mutual Insurance Co. *v.* Graybill.]

culty." Now, the construction of the contract in connection with the by-laws, was without doubt or difficulty, in case of total loss. The insured bore one-fourth of it, which, upon a fair interpretation of the whole paper, resolutions and agreement, was what we think was intended. What the effect of the proviso may be in case of partial loss, is not now before us for determination. We express no opinion upon the subject. It is not easy to understand what the penman meant; it is certainly obscurely and unhappily expressed so as to convey any clear meaning. If I might hazard a conjecture (which, however, is entirely my own), it would be that by "sum insured," was meant the sum which was the basis of the insurance, in other words, the valuation of the premises in the policy, a change of phraseology which makes the whole simple and just.. It perhaps occurred to the writer, that the broad words, "three-fourths of the actual loss," might entitle the insured to demand more than three-fourths of the valuation.

There can be no question that the offers of parol evidence to explain the writing were rightly rejected.

　　　　　　　　　　　　　　　　　　　　Judgment affirmed.