## Dubin Paper Company *v.* Insurance Company of North America et al., Appellants.

Argued November 16, 1948. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

*Horace Michener Schell,* for Insurance Company of North America, appellant.

*Frank Rogers Donahue, Jr.,* for Provident Trust Co. et al., Executors, appellants.

*Charles J. Biddle,* with him *J. Horace Churchman,* for Philadelphia Contribution, etc., appellant.

*Earl G. Harrison,* with him *Arlin M. Adams* and *Schnader, Harrison, Segal & Lewis,* for plaintiff, appellee.

OPINION BY MR. CHIEF JUSTICE MAXEY, January 10, 1949:

Plaintiff brought a bill in equity against the defendant insurance companies and the executors of the estate of Wilkins J. Perkins, deceased, to compel the insurance companies to pay the proceeds alleged to be due under certain policies of fire insurance issued to the decedent in his lifetime, covering properties 34 North Delaware Avenue and 35 North Water Street, Philadelphia, to the executors; and to have the court declare that the executors of the estate hold the proceeds as trustees for the plaintiff.

Defendants, Insurance Company of North America and The Philadelphia Contributionship for the Insur-

ance of Houses from Loss by Fire, filed answers denying liability either to Perkins or his estate, or to the plaintiff.

At the time of the fire, April 25, 1946, the premises were partially destroyed by fire. At that time the premises were insured against loss by fire on the following policies:

Philadelphia Contributionship for the
  Insurance of Houses from Loss by Fire,
    In the name of Wilkins J. Perkins—    $  3,000.00
Insurance Company of North America,
    In the name of Wilkins J. Perkins—      33,500.00
Commonwealth Insurance Company,
    In the name of Frank Dubin—[1]          12,500.00
Reliance Insurance Company,
    In the name of Frank Dubin—[1]          12,500.00
                                          _____
                         Total—    $  61,500.00

On March 5, 1946, Perkins entered into a written agreement to sell the premises to Frank Dubin as agent of plaintiff for $25,000. Dubin assigned the agreement of sale to the plaintiff, which had been occupying the properties as tenant for several years. After the execution of the agreement of sale, two policies aggregating $25,000 were obtained in which the purchaser was named as the insured. Upon ascertaining that the insurable value of the property was considerably in excess of the purchase price of $25,000, plaintiff made inquiry through the agent for the vendor, and, upon being informed that the vendor was then carrying additional insurance in the amount of $36,000, plaintiff took no steps to increase it.

On April 25, 1946, prior to the settlement for the properties, they were damaged by fire to the extent of $49,353. Claim was made by the plaintiff on the policies

---

[1] Frank Dubin, the insured on these two policies, is President of Dubin Paper Company, plaintiff in this action, and carried this insurance in behalf of the Company.

for $25,000 issued to it by the Commonwealth and Reliance Companies and payment was made to the plaintiff by these companies.

The two policies upon which this action is brought were written in the name of Wilkins J. Perkins as owner and were procured by him before the agreement of sale was executed. The policy issued by the Insurance Company of North America was written in 1943 for $23,500. and by endorsement dated April 3, 1946, which endorsement was executed after the agreement of sale was entered into, was increased to $33,500.

On May 25, 1946, Perkins, through his attorney, Frank Rogers Donahue, Esquire, wrote the following letter to plaintiff: "Mr. Perkins has instructed me to say that we will in every way cooperate with the buyer Dubin Paper Company or Frank Dubin, by joining in any assignment or documents, which will protect you in any claim that you have on our fire insurance policies." Plaintiff thereupon made settlement for the properties, paying the balance of the purchase price. A deed from Wilkins J. Perkins to plaintiff was duly executed and delivered and was recorded on June 8, 1946.

On June 19, 1946, a conference was held between the adjusters of the various insurance companies and a representative of the plaintiff. At this meeting an agreement was reached as to the sound value of the properties: $67,840.50, the amount of loss: $49,353, and the apportionment thereof to be made among the companies. The person representing the North American Insurance Company at the conference, in his report as to the agreement reached, informed the company of the existence of the agreement of sale and of the date on which settlement was to be made.

On August 15, 1946, the Insurance Company of North America forwarded to Perkins' attorney its draft for $26,883.34. On August 26, 1946, the Philadelphia Contributionship forwarded to Perkins' attorney its

draft for $2,407.46. Mr. Donahue, the attorney for Perkins, notified the defendant insurance companies that Perkins had received the full purchase price for the properties and voluntarily returned the checks to them.

On December 13, 1946, Perkins died testate, and letters testamentary were issued to the defendants, Frank Donahue and the Provident Trust Company of Philadelphia, under his will.

Upon the refusal of the defendant companies to make payment to the plaintiff under the policies which they had issued to Perkins, plaintiff filed its bill in equity against the defendant companies and the executors of Perkins. Plaintiff asked that the court decree first, that "defendant Insurance Company of North America be directed to pay the sum of Twenty-six Thousand Eight Hundred and Eighty-three Dollars and Thirty-four Cents ($26,883.34) with interest from July 25, 1946, to Provident Trust Company of Philadelphia and Frank Rogers Donahue, executors under the will of Wilkins J. Perkins, deceased, that being the amount due under its policy No. 99416 according to the apportionment settlement hereinbefore mention . . .; SECOND, That defendant Philadelphia Contributionship for the Insurance of Houses from Loss by Fire be directed to pay the sum of Two Thousand Four Hundred and Seven Dollars and Forty-six Cents ($2,407.46) with interest from July 25, 1946, to Provident Trust Company of Philadelphia and Frank Rogers Donahue, executors under the will of Wilkins J. Perkins, deceased, that being the amount due under its policy No. 9047 according to the apportionment settlement hereinbefore mentioned . . .; THIRD, That defendants Provident Trust Company of Philadelphia and Frank Rogers Donahue, executors under the will of Wilkins J. Perkins, deceased, be directed to accept and receive this insurance money and to hold the same as trustees for plaintiff, and that they be directed thereafter to pay over without further delay,

the said money, amounting in all to Twenty-nine Thousand Two Hundred Ninety Dollars and Eighty Cents ($29,290.80) with interest from July 25, 1946, to plaintiff, as rightful owner thereof."

After a hearing, the Chancellor found in favor of the plaintiff and the final decree was entered granting the first and second prayer specified above and further decreeing that upon receipt of said sums from the insurance companies, [$26,883.34 with interest from July 25, 1946 at the rate of 6 per cent and $2,407.46 with interest from August 26, 1946 at the rate of 6 per cent] the said Frank Rogers Donahue and Provident Trust Company, executors under the will of Wilkins J. Perkins, deceased, shall pay over the said sums to Dubin Paper Company forthwith. This appeal followed.

Two of the questions posed by the defendants relate to the validity of the alleged settlement agreement. Defendants contend that the settlement agreement is not valid because (1) the person who acted for them had no authority to act as an adjuster, and (2) at the time of the settlement they did not know that plaintiff had paid Perkins the balance of the purchase price. The pertinent facts are these: John G. Monrose, Jr., acted as an adjuster for the defendant companies; he attended the settlement conference at which an agreement was reached as to the actual loss and the proportion in which it was to be shared by the various insurance companies; he notified the companies of the result of the conference; he had notice of the agreement of sale, which contained the date on which settlement of the property was to be made, and communicated this information to the Insurance Company of North America; and with this information available the officers of the companies accepted the figures recommended by the adjuster and authorized the execution and delivery of checks in payment of the loss. No further evidence of the companies' willingness to settle the loss for $48,-353.00 was required in this case.

In Goldin's "The Law of Insurance in Pennsylvania", Vol. I, Sec. 242, the following principle is stated: "The insurance company has the right to delegate the power of adjustment to persons in its employ, and an adjuster so employed has the power to make arrangements with the insured after loss, and to bind the insurer thereby. The agent of the company must be authorized to adjust the loss, or the conduct of the company with respect thereto must be such as to reasonably induce the insured to believe he has such authority. Mere declarations of the agent alone are not sufficient, but the declarations of the agent together with the acts and admissions of officers of the company, the correspondence in the company's own name will be sufficient . . ." Even if Monrose had no express authority, the defendant companies acquiesced in the adjustment by sending out drafts in conformity with Monrose's report. This constitutes an admission by the companies that the amount set forth on the draft was due to Perkins under their policies. The notification by Monrose of the agreement of sale was sufficient to put the defendant companies on notice as the agreement stated that settlement on the property was to be made no later than June 1, 1946. The deed was recorded shortly after that date and the company could have checked the records or discovered by inquiry the situation before sending out the drafts on August 14, and August 15, 1946.

However, our decision need not be placed on the validity of the settlement agreement. Plaintiff argues that Perkins had a right of action on the policies entirely apart from the right to enforce the settlement agreement. Plaintiff's propositions are these: (1) Perkins' policies were in effect on the date of the fire, and (2) they were not converted by the agreement of sale into policies insuring merely the payment of the balance of the purchase price.

The policy in the Insurance Company of North America was dated May 1, 1943. At that time he had an insurable interest in the entire property. No agreement of sale was then outstanding and he insured the entire interest in the property. On March 5, 1946, Perkins entered into an agreement of sale, the effect of which was to convey to the purchaser the equitable interest in the property. The policy issued by the Insurance Company of North America in the name of Wilkins J. Perkins contains the following provision: "It is hereby understood and agreed, anything in this policy to the contrary notwithstanding, that, if the property insured by this policy is, or shall become subject to an Agreement of Sale, this policy shall not be voided thereby nor shall the right of the Assured hereunder to recover be invalidated thereby, nor shall the interest of the vendee or any other parties to the Agreement of Sale except the Assured hereunder be insured by this policy". The company thus continued to insure Perkins after the property became "subject to an Agreement of Sale". There is no limitation of coverage in the event that an agreement of sale is entered into. There was no provision for reducing the premium under the circumstances stated. If the last quoted clause, beginning with the word "nor", be deemed ambiguous it must be construed against its author, the insurance company. We do not regard it as ambiguous. It means that the interests of the vendee were not directly covered by the policy, that between the vendee and the insurance company there was no privity of contract and that whatever claim, either in law or in equity, the vendee might have against the vendor should fire transmute the latter's building into *money,* was of no legal concern of the insurer.

The Philadelphia Contributionship takes the position that its liability terminated on the execution of the agreement of sale by virtue of a specific provision in its policy, as follows: "XI. In case the Assured shall sell the property insured, the benefit of insurance shall be

lost unless the Policy be assigned at the execution of the deed and brought to the Office for approval and entry within sixty days thereafter." Inasmuch as the loss occurred prior to "the execution of the deed" and the rights of the parties were fixed as of the date of the loss, the provision invoked by the Philadelphia Contributionship is unavailing.

Defendants contend that after the agreement of sale was executed the policies merely covered Perkins only to the extent of insuring the payment of the balance of the purchase price. They further contend that since the balance of the purchase price has been paid, Perkins suffered no loss. The decisions in *Insurance Co. v. Updegraff*, 21 Pa. 513, and *Reed v. Lukens,* 44 Pa. 200, negative these contentions. In the *Updegraff* case there was an action on a policy of insurance effected by the vendor after articles for the sale of the property and before conveyance. The agreement of sale provided for the payments on the property in yearly installments. The vendee took possession immediately. The premises insured were entirely consumed by fire before the contract price was completely paid. One of the conditions in the policy was as follows: "The interest of the insured in this policy is not assignable, unless the assignee, before any loss happens, shall give notice in writing of the assignment, in pursuance of the by-laws of this company, and have the same endorsed on, or annexed to this policy." The policy was not assigned by the vendor to the vendee.

The insurance company argued: (1) that to entitle plaintiff to recover, he must satisfy the jury he had an interest at the time of the insurance, and at the time the fire happened; and that, as the policy is strictly a contract of indemnity, he can only recover the value of his beneficial interest at the time of the fire, if any, in the property destroyed. (2) That if the plaintiff, Updegraff, is entitled to recover the loss which he has sustained, if any, then the company has a right to be subrogated

to all his securities as against his vendee, Winegardner. (3) That Winegardner having paid to Updegraff, subsequent to the insurance the sum of $1108, on the articles of agreement for the sale of the premises, such payment reduces the liability of the company pro tanto.

This Court rejected these contentions, saying: "By the contract of sale the purchaser of real estate becomes in equity the owner; but this rule applies only as between the parties to the contract, and cannot be extended so as to affect the interests of others . . . At law the vendor, before payment of the purchase-money and delivery of the conveyance, is, to all intents and purposes, the owner of the estate. It is true that he is a trustee for the vendee, who, as between the parties to the contract, is bound to take the estate subject to every loss which may happen to it without the fault of the vendor, and is consequently entitled to every benefit accruing to it after the agreement . . . As the vendor is a trustee for the vendee, every act of his in relation to the estate will be presumed to be for the benefit of the vendee, subject of course to the prior claims of the vendor himself . . . Although the vendor is not bound to insure, or even to continue an insurance already made, he may, like any other trustee having the legal title, insure if he thinks proper, to the full value of the property . . . An insurance upon a house, effected by the vendor, is prima facie an insurance upon the whole legal and equitable estate, and not upon the balance of the purchase-money. Where the form of the policy shows it to be upon the house, and not upon the debt secured by it, the burthen of showing that the insurance was upon the latter and not upon the former, rests upon the underwriters. There is no hardship in this. The premium paid, as compared with that usually charged where the insurance is upon houses, and not upon debts secured by them, is generally decisive of the question, and the rates of insurance are peculiarly within the knowledge of the insurance company. If the

insurance was upon the whole estate, the premium
would be according to the usual rates for houses of
that description and location; if it was only upon the
debt due to the vendor, there would be a large reduction,
on account of the responsibility of the vendee, and the
value of the lot of ground included in the sale, because
both of these would, in that case, stand as indemnities
to the underwriters. They would be entitled to a cession
of the vendor's claims, from which an ample indemnity
might be recovered. If the lot was worth the balance
of the purchase-money, there would be no risk what-
ever, and the premium would be quite insignificant . . .
But there was no evidence tending to prove that the
premium was less than the usual rates for houses of
the description set forth in the policy, where the whole
estate is insured. Nor was there any offer to return
any portion of the premium. . . . The instrument before
us is an open policy of limited extent. The underwriters
agreed to make good to the insured, not all his loss, but
all such loss or damage, not exceeding the sum stated,
as shall happen by fire to the property,—the loss or
damage to be estimated, not according to the balance of
purchase-money which may remain unpaid at the time
of the damage, nor according to the probabilities of re-
covering such balance from the vendee, or from the lot,
but 'according to the true and actual value of the said
property.' The policy is in form an insurance upon
the house, and not upon the debt; and no evidence
whatever was given to change its character, or to show
that anything more or less was intended by the parties.
It follows that the plaintiff below was entitled to
recover, under a trust, as to the surplus, for the benefit of
the vendee. The underwriters have shown no equitable
right to intermeddle between the vendor and the
vendee. Under such circumstances they must be con-
tent to respond to the party with whom they made the
contract of insurance."

The authority of the case just quoted from was recognized in *Reed v. Lukens,* 44 Pa. 200, and in many later cases. In *Reed v. Lukens* defendant owned a farm and had insured the buildings thereon for $3150—$900 of which was on the barn. He contracted with plaintiff for the sale of the property, delivery to be made on April 2, 1862. Before the time appointed for delivery of the deed, the barn was destroyed by fire. On the face of the policy the barn appeared to be insured for $300 and this sum was regarded by the parties as the amount insured upon that building. The policy of insurance was transferred to the vendee. A second assignment of the policy was executed, transferring to the vendee the vendor's "right, title, and interest in and to a certain claim of $300" against the insurance company arising from the loss of the barn. The company acknowledged itself liable for $900, the amount actually insured on the barn and paid $300 to the plaintiff. The question to be determined was whether or not plaintiff was entitled to the remaining $600.

This Court, in ruling for the plaintiff, said: "On the execution of the contract of sale, the plaintiff became, in equity, the owner of the property—the defendant holding it thereafter as his trustee, with a right to retain it until the purchase-money should be paid. Whatever advantage might thereafter arise to it would be the plaintiff's, and whatever loss might befall it, he must sustain; the defendant had no further interest in it, except as a security for the purchase-money; he would neither lose nor gain by any change which might occur to it: Siter, James & Co.'s Appeal, 2 Casey. When, therefore, the barn was burned, it was the plaintiff's property that was destroyed; defendant lost nothing; the plaintiff was still obliged to take the property and pay the purchase money. The insurance company, however, became liable to pay for the loss to the defendant, because, as is said in Updegraff v. Insurance Co., 9 Harris 513, he, as respects third persons, not privy to

the contract of sale, is still to be regarded as the owner of the property. But as between himself and the plaintiff, the property was not his, but the plaintiffs; he could not appropriate to himself the money which the insurance company became liable to pay on that account; he had the property in trust, and the right which accrued in consequence of its destruction, took its place, was held in the same way, and liable to be enforced in a court of equity."

Although the facts in the instant case are not exactly the same as those in the two cases above-cited, the same considerations as set forth above are applicable to it.[2] Defendants attempt to distinguish the *Updegraff* case by stating that since the policy in the instant case was taken out prior to the making of the agreement of sale, it cannot be assumed that Perkins undertook or intended to insure the interest of the buyer. Actually, if the act of the seller in not reducing his insurance after the agreement of sale was entered into is not sufficient to indicate an intent to insure for the buyer's benefit, there is present in the case the further fact that the seller increased the amount of his insurance a month after the agreement of sale was executed. There seems to be no reasonable explanation for this act other than that he intended to benefit the buyer. Defendants attempt to distinguish the *Reed* case by concluding that it involved only a question of an assignment and is therefore not applicable here. The assignment in the *Reed* case was of the seller's interest in his insurance policy. To determine what was assigned it was necessary to determine first what the seller's interest was. A barn worth $900 and completely covered by insurance had been destroyed by fire. Despite the fact that the insured-seller received the balance of the purchase price, the

---

[2] The insurance contract in the *Updegraff* case was entered into after the agreement of sale was negotiated. In the *Reed* case there was an assignment of the seller's interest in his insurance policy.

court said that his interest in the policy was $900, and then declared that this was the value of the assignment.

The kernel of the defendants' argument is the following statement in the brief of the Insurance Company of North America:. "A contract of fire insurance is a personal contract of indemnity for the loss resulting to the insurable interest possessed by the insured. The insurer's liability is measured thereby. All such contracts of property insurance are considered contracts of indemnity intended solely to indemnify the insured for his actual monetary loss by the occurrence of the disaster. Unless the insured has sustained an actual monetary loss, the insurer has no liability." The error in this argument is in the defendants' interpretation of the word "loss". They give that word too wide a meaning. A contract of fire insurance, in simple language, means this: For the premium paid by the insured, the insurer will, in case the insured's building is destroyed by fire, indemnify him to the extent that he can show that his wealth has been depleted by that fire. In other words, the insurance company gives the insured the equivalent in money of the building lost by fire. The "loss" which the insurance company contracted to pay to the owner of the building in the event of its destruction by fire is the actual worth in money of that building before it was destroyed. Suppose that after a building is destroyed by fire a benevolent relative hears of the insured's loss and, not knowing or caring whether the building was insured, sends the insured a check for $10,000 as a solace to him, would the insurance company be permitted in its settlement with the insured to deduct the $10,000 which was given to him by his relative as a result of the loss? The only logical answer to that question is "No". The insurance company would have no right to appropriate to itself any part of the windfall to the insured. Suppose that after the building was destroyed by fire there was found in the ruins, in a heat-resistant container which, un-

known to anyone had been concealed under one of the floors of the destroyed building, the sum of $10,000. That would belong to the insured unless some other person could establish a superior claim to it. The insurance company would have no valid claim on that windfall. The destruction of a building by fire may conceivably bring many benefits to the owner and whatever these may be, the insurance company cannot participate in them.

Suppose that A owned a somewhat antiquated, wooden ten-story building on a centrally located corner in a fast-growing city, that the value of the building was $200,000, and that it was insured for that amount, and that it was destroyed by fire. Suppose further that on the day before the building was destroyed, B had said to A: "I will give you $300,000 for this entire property", and A replied: "I demand $350,000." B then said: "If your lot was vacant I would give you that much for it, but it would cost me $50,000 to raze this building, as I would do if I purchased your property, for I would like to erect a modern office building on the site." After the building is burned, B says: "Now I will give you $350,000 for this property," and A sells it to him for that sum. Even if the insurance company could establish these facts, it would have no right to demand that this $50,000 excess price, which A had received after the building was destroyed, should inure to the insurance company's benefit and be deducted from the amount of the insurance which under the policy was due from the insurance company to A.

Since in the illustration cited, A had an insurable interest in the building of $200,000, what the Supreme Court of the United States said in *United States v. American Tobacco Company,* 168 U. S. 468, applies, to wit: "Because an owner of property may be able to reimburse himself in case of its destruction, from other

sources,[3] is no reason for denying to such owner an insurable interest in the property. An owner has an insurable interest in his property to the extent of the value of the building on it, notwithstanding the existence of a mortgage on the property sufficient to absorb it." Persons who buy any property with the idea of razing the building erected on it in order to erect a much more modern structure, properly regard the old building as a liability because of the cost of razing it, but that does not reduce the owner's insurable interest in the property.

In *Foley et al. v. Manufacturers' & Builders' Fire Ins. Co. of New York,* 152 N. Y. 131, 46 N. E. 318, plaintiffs owned land upon which structures were being erected. The contractors were to build the houses and complete them at a time specified for a sum to be paid ten days after completion. The defendant insurance company undertook to insure plaintiffs against loss by fire. Before the completion of the houses a fire occurred. The defendant claims that plaintiffs had no interest to protect in the structures while in their incomplete state since the destruction by fire would be the loss of the contractors, and not of the owners, whose obligation to build and complete the houses as the condition of pay·ment, would continue after, as before, the fire.

---

[3] Another example: If a man has an automobile insured for its full value against destruction by fire or loss by theft and the automobile is destroyed by fire or is stolen and if the dealer from whom the insured purchased the car presents him with a new car, either for nothing or at a greatly reduced price, that fact cannot inure to the benefit of the insurance company. The owner of the car so lost can recover on the policy against the insurance company for the full value of his car at the time it was burned or stolen. If he, under the facts stated, wishes to present to the dealer, who has been so generous, a part or all of the proceeds of the insurance after it is collected, that is exclusively his own affair. The company has nothing to say about it.

The Court of Appeals said: "The defense comes to this: That as the plaintiffs, by their contract with third persons, have imposed upon them the risk and expense of furnishing complete structures, and have assumed no liability until the structures are completed, they had no insurable interest and have sustained no loss. But the contract relations between the plaintiffs and the contractors is a matter in which the defendant has no concern . . . It is possible that if the defendant is compelled to pay the policy the plaintiffs may, if they insist upon their rights against the contractors, get double compensation, unless they should be adjudged to hold the fund recovered for the contractors. But, however this may be, the owners had an insurable interest to the whole value of the buildings on their land, and the defendants neither can compel the plaintiffs to put the loss on the contractors, nor can they resort to the terms of the building contract to diminish the liability for an actual loss within the terms of the policy. The fact that improvements on land may have cost the owner nothing, or that if destroyed by fire he may compel another person to replace them without expense to him, or that he may recoup his loss by resort to a contract liability of a third person, in no way affects the liability of an insurer, in the absence of any exemption in the policy."

The problem before us is clarified if the fact is noted that as between the insured and the insurance companies the insured remains the owner of the property until the sale is completed, but as between the vendor and the vendee the vendor holds only the legal title and if he receives the proceeds of the insurance policy on his property he holds these as trustee for the buyer. The vendee's interest was not insured by the defendants; the vendor's was. The vendee's right to a part of the policy's proceeds in the vendee's hands is derived from the agreement of sale when that is given the meaning which under

the circumstances of this case the "conscience of equity" says it must be given.[4]

The following statement from plaintiff's brief is correct: "The theory that the vendor's policies represented nothing more than his security for the unpaid balance of the purchase price is completely untenable. There is no evidence of any kind that such was the intention. On the contrary, all the evidence points to the fact that Perkins, who insured his property long before he contemplated selling it, had every intention of insuring his entire interest therein at a time when he had both legal and equitable title. Perkins paid premiums for insurance on his whole estate, not merely on the balance of the purchase price." Perkins' right against the vendee was to collect the balance of the purchase money according to the contract of sale. His rights against the insurer was, in the language of the policy of the Insurance Company of North America, to recover after the fire "the actual cash value (ascertained with proper deductions for depreciation) of the property at the time of the loss or damage, but not exceeding the amount which it would cost to repair or replace the same . . ."[5]

_____

[4] "A constructive trust is nothing but 'the formula through which the conscience of equity finds expression.' Property is acquired in such circumstances that the holder of the legal title may not in good conscience retain the beneficial interest. Equity, to express its disapproval of his conduct, converts him into a trustee. Such formulas are merely the remedial devices by which a result conceived of as right and just is made to square with principle and with the symmetry of the legal system:" Pages 42 and 43 of "The Nature of the Judicial Process" by Benjamin N. Cardozo, citing *Ellerson v. Westcott*, 148 N. Y. 149; *Beatty v. Guggenheim Exploration Co.*, 225 N. Y. 380, 386.

[5] The provisions in this policy just quoted from, which was executed May 1, 1943, are substantially in accord with the standard form of fire insurance policy now in effect in Pennsylvania, as prescribed by the Act of 1921, May 17, P. L. 682, secs. 522 and 523, 40 PS secs. 657 and 658, as amended by the Act of 1945, April 25, No. 136, which amendment went into effect September 1, 1945, and which reads as follows: "Cash or Sound Value—Measure of Damage to

Suppose that the policy had provided that the insurance companies should, in the event of the property's destruction by fire, build on the site a duplicate of the property destroyed, the fact that the insured received after the fire from the vendee the balance due on the agreement of sale would not relieve the insurance companies in the slightest degree from the duty of rebuilding the property and the companies could not legally demand that the balance paid on the agreement of sale should be used in compensating them in part for the restoration of the property. Whether after the fire the insurance companies compensated the insured in dollars, as they agreed to do to the extent of the loss caused it by the fire, or whether they would have compensated the insured in building materials and labor, as they might have agreed to do, would be immaterial in the decision of the legal question involved in this case.

That money due on a policy of insurance for a loss by fire occurring between the time of the agreement of sale and the time fixed for settlement belongs to the vendor, but the vendor is trustee for such money and must then account to the vendee for it, is the law. This rule is wholly an equitable one. (See footnote 4, supra.) In *Hess v. Vinton Colliery Co.*, 255 Pa. 78 and again in *Spratt v. Greenfield et al.*, 279 Pa. 437, 439, this Court repeated with approbation the language of Justice

an amount not exceeding ............ Dollars does insure.......... and legal representatives, to the extent of the actual cash value of the property at the time of loss, but not exceeding the amount it would cost to repair or replace the property with material of like kind and quality within a reasonable time after such loss, without allowance for any increased cost of repair or construction by reason of any ordinance or law regulating construction or repair ,and without compensation for loss resulting from interruption of business or manufacture, nor in any event for more than the interest of the insured, . . ." This provision in the 1945 Pennsylvania Standard Fire Insurance Policy is similar to the Pennsylvania Standard Fire Insurance Policy of 1921, except that the policies under the Act of 1945 do not refer specifically to depreciation.

DUNCAN in *Richter v. Selin,* 8 S. & R. 425: " 'When a contract is made for the sale of land, equity considers the vendee as the purchaser of the estate sold, and the purchaser as a trustee for the vendor for the purchase money. So much is the vendee considered, in contemplation of equity, as actually seized of the estate, that he must bear any loss which may happen to the estate between the agreement and the conveyance, and he will be entitled to any benefit which may accrue to it in the interval, because by the contract he is the owner of the premises to every intent and purpose in equity.' " This principle was enlarged upon in *Smith v. Faust,* 92 Pa. Superior Ct. 267, where the defendant made an oral contract to build a house for the plaintiff within a specified time. Before completion it was destroyed by fire, and plaintiff sued to recover moneys advanced by him as the construction progressed. Defendants averred that they were not obliged to reimburse plaintiff as he had collected $5,000 in insurance on the building partially erected by the defendants. The court said: "His act in so doing . . . may . . . constitute him a trustee for the defendants as to the moneys received over and above his own investment in the building, somewhat as a vendor who receives insurance on buildings after he has entered into articles for their sale, is held a trustee for the purchaser as to any moneys over and above the unpaid purchase money: Reed v. Lukens, 44 Pa. 200, 202; Ins. Co. v. Updegraff, 21 Pa. 513; Bauer v. Hill, 267 Pa. 559, 563; Parcell v. Grosser, 109 Pa. 617, 620; Farmers Mut. Ins. Co. v. Graybill, 74 Pa. 17, 23." Further citations are unnecessary.

The fact that Perkins' right against the purchaser of the property was not of the same dollar value as was his right against the insurer is of no materiality in this case. In the brief of Dubin Paper Company (Appellee) appears this statement: "It is admitted that this dual relationship [referring to the two respective rights of Perkins] is not the usual one in the law." We find

here no "duality of relationship" [6] or any kind of relationship which need embarrass any adjudicating tribunal.

Perkins was simply the beneficiary in two different contracts whose subject matter was his property. The subject matter of the insurance contract was a building; the subject matter of the agreement of sale was the same building, plus the lot on which the building was situated. One contract defined Perkins' rights against the insurance companies; the other contract defined Perkins' right against the purchaser of his property. In the enforcement of his rights against the respective other parties to the contracts Perkins brought no actions which the law condemns, for the court in the exercise of its equity powers administered even-handed justice to all parties concerned.

There is not case cited by the appellants which conflicts with the conclusions we have reached. Appellants cite the case of *Gorman's Estate*, 321 Pa. 292. There at the time the insurance was secured the insured was the life tenant of a property and "she wanted to protect that interest alone". She was not interested in the interest of the remainderman. In the instant case the insurance was taken to protect the interest in the building. Appellants also cite the case of *Moving Picture Co. of America v. Scottish U. & N. Insurance Co.*, 244 Pa. 358. In that case the owner of a building leased it to Lubin and provided that in case of fire 'all rents

---

[6] There are certain well recognized "dual relationships" between individuals and also between legal entities. For example, the root of the American system of government is found in the principle of duality of sovereignty. While the states are as political entities, in the main subordinate to the Federal Union, the power of the State to regulate the conduct of the citizen is in many respects paramount.

Another illustration: When Queen Victoria married Prince Albert, the latter became one of the Queen's subjects, but as her husband he had over her such authority as was given by the laws of Great Britain to every husband in the realm.

should cease. In other words, when the fire took place Lubin's obligation ended. Lubin subleased the building to the plaintiff in that case and the latter insured the building from all loss by fire and the plaintiff then leased it to Royal and provided that in case of fire all rent should cease. The building burned and plaintiff asserted a claim for itself in the insurance policy. The court denied the claim because at no time was plaintiff in a position to incur risk of loss by fire. He stood in no fiduciary relationship to anyone who might be damaged by the fire.

Appellant also cited the case of *Imperial F. Ins. Co. v. Dunham,* 117 Pa. 460. In that case a policy of insurance contained a condition that it should be void, "if the interest of the assured be other than the entire, unconditional and sole ownership; or, if the property be insured be a building standing on ground not owned by the assured in fee simple:" Held, that the assured, though but a purchaser under articles of the land on which stood the insured property and the purchase money unpaid, was such an owner in fee that the policy was not void under said condition. The policy contained the provisions that it should be void "if, without notice to the company and permission therefor indorsed thereon, . . . or, if the policy be assigned before a loss; . . ." Before a loss there was a transfer of the property followed by an assignment of the policy assented to by the company's agent having power to "renew and consent to the transfer of policies:" It was held that the agent's assent to the assignment was an exercise of his express power and not a waiver of a condition. This Court said: "How can Clarke [the insurance agent] be said to have waived any condition of the contract in doing just what the contract provided for, what he was appointed to do, and what, in the exercise of a reasonable discretion for the interest of the company, it was his duty to do. Clarke knew, when he gave

his approval to the transfer, that the title had changed; this fact was found by the jury, and the knowledge of Clarke was notice to the company.". That there is no inconsistency between the opinion of the court in that case and the conclusion we have reached in this case is manifest.

In the brief of one of the appellants, The Philadelphia Contributionship there is this quotation from the opinion of the dissenting judge of the court below. "A contract of fire insurance is a personal contract of indemnity for the insurable interest possessed by the insured at the time of loss. It is not a contract to insure a property against fire, but is one to insure the owner of property against loss by fire." This principle is correct but the appellants in order to sustain their position give it an erroneous interpretation. Of course, the policy does not "insure a property against fire"; it does not purport to usurp the functions of Providence. But it does insure the owner of the covered property against the loss caused by the igneous destruction of his property and that loss is measurable as soon as the destruction is complete. The loss the company contracts to remedy is the fire-created depletion of the insured's assets, and that is made up not by the erection of a duplicate of the building destroyed but by paying the insured *its value in money*. This liability the insuring companies cannot escape by anything any third party may later do for the insured's benefit.

Judge MAWHINNEY, after pointing out that "A reference to the policies reveals conclusively that by the contract of insurance the insurable interest of Perkins was not to be affected by an agreement of sale", correctly summed up this case as follows: "The vendor had an insurable interest in the whole estate both legal and equitable, and not just to the extent of the unpaid purchase price. . . . The policies when issued covered the whole interest, the premiums covered vendor's entire insurable interest and the contracts of insurance

covered the vendor's insurable interest even in the event of an agreement of sale. Further, the insurance companies, after the fire loss and with knowledge of the agreement of sale, recognized Perkins had an insurable interest in the full value of the property by actually sending drafts in payment of this claim to the attorney for the Perkins' estate. . . . The insurance companies have accepted the entire premium for the whole interest both legal and equitable; they had intended to insure the entire interest and there has been no change in their insured risk. . . . Why should they be permitted to take advantage of a collateral contract existing and enforcible only as between vendor and vendee so as to escape liability for a loss contracted for and the risk for which they were paid for many years? . . . After an agreement of sale and before settlement the vendor holds the title in trust for the vendee and the vendee is trustee for the vendor for the unpaid purchase money. . . . But this rule applies only as between the parties to the contract and cannot be extended so as to affect the interest of others. In Hill v. Cumberland Valley Mutual Protection Co., 59 Pa. 474, the Court stated at page 477: 'The nature of the equity and how it may result, is a matter, however, obviously between the vendor and vendee alone, or persons in privity with them.' "

The defendants' basic error is their postulate that the insured's recovery was limited to the balance of the purchase money under the agreement of sale. It was not so limited anywhere. The measure of the insured's recovery was the one created by the policy, that is, "the actual cash value of the property at the time of the loss or damage". This was found to be $49,353.

All the legal conclusions of the court below are sound.

The decree is affirmed at appellants' cost.

CONCURRING OPINION BY MR. JUSTICE JONES:

I concur in the judgment of the court on the ground that the settlement for the loss by fire made by all parties concerned, or by their duly authorized representatives, was with full and complete knowledge of all insurance in force and of the extent of the loss, and is therefore binding. The respective rights and liabilities of the parties, so established, were in no way affected by the gratuitous return by the attorney for the former owner of the property to the defendant insurance companies of their checks given in payment of their respective liabilities on account of the total loss.